# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3753

_____

| | | |
|---|---|---|
| Brian Akins; Connie Akins, | * | |
| | * | |
| Plaintiffs/Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Mick Epperly, in his individual and | * | |
| official capacity; Adam Crouch, in his | * | |
| individual and official capacity; | * | |
| Jeffrey Younger, in his individual and | * | Appeal from the United States |
| official capacity; Doug Henry, in his | * | District Court for the |
| individual and official capacity, | * | Western District of Missouri. |
| | * | |
| Defendants, | * | |
| | * | |
| Robert Vaughan, in his individual and | * | |
| official capacity; Jason Trammell, in | * | |
| his individual and official capacity, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| Larry Stockton, Jr.; Barry County, | * | |
| Missouri, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted:  September 24, 2009
Filed:  December 18, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Missouri State Highway Patrol Officers Jason Trammell and Robert Vaughan appeal the district court's denial of their motions for summary judgment based on qualified immunity. Trammell and Vaughan investigated the series of events during which Brian Akins was shot twice by a Barry County sheriff's deputy. Akins brought claims under 42 U.S.C. § 1983 and state tort law against some nineteen defendants,[1] including Trammell and Vaughan. Akins alleged that Trammell and Vaughan violated his substantive due process and Fourth Amendment rights. Because Akins has failed to present sufficient evidence that Trammell's and Vaughan's alleged failure to investigate was intentional, reckless, or deliberately indifferent so as to shock the conscience, we reverse and remand with directions.

## I. Background

Akins was on probation for domestic assault at the time of the incident giving rise to this litigation. Based upon his refusal to submit to a drug test, a warrant was issued for his arrest.

## A. The Incident

On December 30, 2004, Akins, his mother, and his brother drove to the Barry County courthouse in Cassville, Missouri, so that Akins and his brother could meet with their respective probation officers. Because Akins's probation officer was out of the office, Akins signed in and then returned to the van to wait with his mother. An

---

[1]The district court denied all motions for summary judgment and stayed the case pending this appeal.

attorney who had previously represented Akins approached the van and warned Akins that there might be a warrant out for his arrest on a probation violation.

As Akins sat waiting with his mother, Barry County Sheriff's Deputies Adam Crouch and Doug Henry looked at Akins as they entered the courthouse. Akins believed that the officers' scrutiny was prompted by the outstanding arrest warrant, and he decided to leave the parking lot even though his brother was still inside the courthouse. As Akins was backing out of the parking space, Deputies Crouch, Henry, and Jeffrey Younger exited the courthouse and approached the van.

According to Crouch, he approached the driver's side door of the van, waved his arms and yelled at Akins to stop because of the outstanding warrant. All three deputies had converged on the vehicle, and Crouch maintained that Younger was in front of the van. Crouch stated that the van was moving forward and was about to strike Younger. Accordingly, Crouch opened the driver's side door and shot Akins in the left thigh. Younger recalled the sequence of events in a similar manner to Crouch's account. Younger stated that he fired at the van as it moved towards him. Younger fired seven shots, none of which struck Akins or his mother. According to Younger, he was struck and then run over by the van.

Akins recounted the event differently. He acknowledged that Crouch yelled at him, but claimed to have not understood what Crouch said. Akins stated that Younger was not in front of the van. According to Akins, Crouch opened the door and fired at him before the van moved forward and Younger was not threatened by the movement of the van.

It is undisputed that Akins accelerated through the parking lot, driving the van over the curb and into the street, where it collided with another vehicle. According

to Akins, the van came to a stop, whereupon Crouch fired another shot, which struck Akins in the back of his left shoulder. The deputies maintain that Akins continued to attempt to accelerate until after Crouch fired the second shot. The deputies opened the driver's side door and placed Akins under arrest. Younger and Akins were transported to the hospital by ambulance. In the course of treating Younger, the paramedics cut his pants from his body. Younger did not sustain any significant injury from allegedly being run over by the van.

## B. The Investigation

Shortly after the incident, Trammell arrived at the scene to investigate the collision between the van and the other vehicle. Vaughan arrived at the scene several hours after the incident and was assigned to be the lead criminal investigator. Based on a probable cause statement from Deputy Henry, Akins was charged that day with first degree assault of a law enforcement officer. Trammell and Vaughan had no role in the decision to file charges. Upon his release from the hospital, Akins was taken to jail, where he remained for seven months awaiting trial.

During his investigation, Trammell examined the roadway, measured the tire marks he observed in the parking lot, and interviewed witnesses. Trammell ultimately completed an accident report, including a diagram of the collision. He did not participate in the criminal investigation of the shooting. As the lead criminal investigator, Vaughan gathered and examined the evidence, including the van, and interviewed witnesses, including Akins's mother and Deputy Crouch. Vaughan detailed his findings in his report. At a deposition prior to Akins's criminal trial, Vaughan testified that a bullet hole he discovered towards the rear of the van was an exit hole from a bullet that had passed through the inside of the van.

-4-

## C. The Criminal Trial

At his criminal trial, Akins highlighted various inconsistencies in the officers' testimony and prosecution's evidence. Younger testified that he fired all seven shots prior to or while being run over by the van. Akins confronted Vaughan with physical evidence that showed that the bullet hole towards the rear of the van was an entry hole and that the bullet had been shot from behind the van. Vaughan corrected his deposition testimony on the stand, and his trial testimony established that Younger was behind the van when he fired the shot, not in front of it.

Younger's pants were admitted into evidence at the trial. They bore tire prints on the inside of the fabric. Trammell testified that the tire marks he observed on the pavement "appear to be acceleration marks," characterizing the marks as "pretty light, but observable." The jury acquitted Akins.

## D. The Civil Suit

Following his acquittal, Akins brought this action against Trammell and Vaughan, alleging a violation of his right to substantive due process and of his Fourth Amendment rights to be free from unreasonable arrest, detention, and prosecution without probable cause. He argues that Trammell's and Vaughan's failure to conduct a reasonably thorough investigation prolonged his detention.

In his resistance to the motion for summary judgment, Akins presented evidence suggesting that Vaughan knew at an earlier time of the error in his testimony about the direction of the bullet but yet did not correct his testimony until he testified at trial. The evidence that the bullet hit the van from behind directly contradicts Younger's testimony that he fired all seven shots prior to or while being run over.

Akins also presented evidence about the tire marks on the inside of Younger's pants. The evidence-receiving officer testified that he did not photograph or report the markings but would have reported anything usual that he observed. No evidence was presented that Vaughan knew of the tire marks on the pants before Akins's criminal trial. Akins highlighted many inconsistencies in Crouch's statements that Vaughan did not investigate. Akins argued that the acceleration marks that Trammell testified to in the criminal trial did not exist. Other witnesses testified that they did not observe whether or not there were tire marks. When asked whether he had noticed any tire marks, Henry responded that he had not observed any. When Crouch was asked if had seen any markings on the parking lot, he testified "I did not pay attention."

The district court denied Trammell and Vaughan's motion for summary judgment based on their claim of qualified immunity. Akins contends that he presented evidence sufficient to survive summary judgment because (1) Vaughan knew that his deposition testimony about the direction of the bullet was incorrect, yet failed to correct it before the criminal trial, (2) Vaughan failed to investigate the physical evidence of tire marks on Younger's pants, (3) Vaughan did not investigate inconsistencies in Crouch's statements, and (4) Trammell falsely testified that there were tire marks in the courthouse parking lot.

## II. Discussion

We review *de novo* a district court's denial of a motion for summary judgment based on qualified immunity. Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006). We view the facts in the light most favorable to the non-moving party and "take as true those facts asserted by [the] plaintiff that are properly supported in the record." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001).

Qualified immunity protects governmental officials from liability for civil damages if they have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

## A. Substantive Due Process Claim

Akins asserts that Trammell and Vaughan violated his right to substantive due process by failing to conduct an adequate investigation. To establish a substantive due process violation, Akins must demonstrate that a fundamental right was violated[2] and that the conduct shocks the conscience. Moran v. Clarke, 296 F.3d 638, 651 (8th Cir. 2002) (en banc) (Bye, J., concurring and writing for a majority on this issue). Whether the alleged conduct shocks the conscience is a question of law. Terrell v. Larson, 396 F.3d 975, 981 (8th Cir. 2005) (en banc).

---

[2]We have recognized that the liberty interest involved in the case of a failure to investigate is "the interest in obtaining fair criminal proceedings before being denied one's liberty in the most traditional sense." Wilson v. Lawrence County, 260 F.3d 946, 956 n.8 (8th Cir. 2001).

"[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see Moran, 296 F.3d at 647 ("[S]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.") (internal quotations omitted) (quoting In re Scott County Master Docket, 672 F. Supp. 1152, 1166 (D. Minn. 1987)). Conduct intended to injure will generally rise to the conscience-shocking level, but negligent conduct falls "beneath the threshold of constitutional due process." Lewis, 523 U.S. at 849. Deliberate indifference or recklessness falls somewhere between negligent and intentional actions. Id. at 849, 851. This middle ground is "a matter for closer calls." Id. at 849.

The Supreme Court has adopted a context-specific approach in determining whether deliberately indifferent or reckless conduct is egregious enough to state a substantive due process claim. Id. at 850. In Wilson v. Lawrence County, we recognized a substantive due process cause of action for reckless investigation in circumstances in which the state actor had the opportunity to consider "various alternatives prior to selecting a course of conduct." 260 F.3d 946, 956-57 (8th Cir. 2001). To establish a violation of due process based on a failure to investigate, Akins must show that Trammell and Vaughan "intentionally or recklessly failed to investigate, thereby shocking the conscience." Amrine v. Brooks, 522 F.3d 823, 834 (8th Cir. 2008).

We have held that the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of

-8-

systematic pressure to implicate the defendant in the face of contrary evidence. See Amrine v. Brooks, 522 F.3d 823, 833-35 (8th Cir. 2008) (summarizing our cases that address the failure to investigate as a substantive due process violation). An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct. Id. at 835; Clemmons v. Armontrout, 477 F.3d 962, 966 (8th Cir. 2007) (rejecting the contention that failure to investigate another suspect shocked the conscience because there was "no explanation for why these actions constitute recklessness as opposed to mere negligence").

Akins highlights multiple errors and inconsistencies in Trammell's and Vaughan's investigation, but he has failed to show conscience-shocking reckless or intentional conduct. There is no evidence that Vaughan or Trammell ever coerced or threatened Akins. Nothing in the record establishes that Vaughan or Trammell purposefully ignored evidence suggesting Akins's innocence. Vaughan did not know about the tire marks inside the pants until the trial, so he could not have purposefully ignored that evidence. In light of his self-correcting trial testimony concerning the direction from which the rear-entering bullet had been fired, there is no evidence that Vaughan intended to misconstrue the evidence against Akins. The evidence that Trammell's reporting on the tire marks on the pavement was flawed does not contradict his testimony. Crouch's and Henry's statements establish only that they had not observed any marks, not that they observed the absence of marks. Further, there is no evidence that either Vaughan or Trammell was pressured to implicate Akins or to improperly strengthen the state's case against him. Akins presents no evidence Trammell and Vaughan were complicit in an attempt to legitimize the shooting officers' conduct. At most, Trammell and Vaughan failed to investigate other leads and to explore inconsistencies in the evidence. In a word, then, Trammell and Vaughan were tangential figures in this incident. Akins thus has not established that Trammell and Vaughan were guilty of more than mere negligence, which is insufficient to establish a claim of conscience-shocking conduct.

## B.  Fourth Amendment Claim

Akins argues that a failure to conduct a reasonably thorough investigation violates the Fourth Amendment's requirement that seizures be based upon probable cause.  Probable cause is determined "'at the moment the arrest is made,' any later developed facts are irrelevant to the probable cause analysis for an arrest."  Amrine, 522 F.3d at 832 (quoting United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004)).  Because Trammell's and Vaughan's involvement occurred after Akins's arrest, Akins cannot maintain a Fourth Amendment claim against them.

Akins maintains that our decisions in Hill v. Scott, 349 F.3d 1068 (8th Cir. 2003), and Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999), support his contention that the officers' post-arrest behavior could constitute a Fourth Amendment violation.  We do not agree.  In Hill, the officers did not immediately release the arrestee once they discovered that they did not have a warrant for his arrest.  349 F.3d at 1071.  We explained that continuing to hold an individual after it has been determined that there was no lawful basis for the initial seizure contravenes the Fourth Amendment unless there is an independent basis for continued detention.  Id. at 1074.  In Kuehl, the investigating officer spoke to the suspect for only twenty seconds, ignored physical evidence that the suspect was actually the victim in the altercation, and refused to interview an eyewitness whose account corroborated the suspect's statement.  173 F.3d at 648.  We held that where there is no indication of exigent circumstances, an officer who unreasonably fails to investigate the incident sufficiently before arresting a suspect is not entitled to qualified immunity.  Id. at 651.  In this case, however, Trammell's and Vaughan's alleged errors had no effect on the decision to arrest or hold Akins, because the initial probable cause determination was made before either officer arrived at the scene of the incident.

## III.

The judgment is reversed, and the case is remanded to the district court for the entry of a judgment of dismissal on the claims against Trammell and Vaughan.

_____