# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3034

_____

Johnny Briscoe

*Plaintiff - Appellant*

v.

County of St. Louis, Missouri; Lane Hollandsworth, individually and in his official capacity as an officer of the St. Louis County Police Department; Stephen Deen, Sr., individually and in his official capacity as an officer of the St. Louis County Police Department; Jack Webb, individually and in his official capacity as an officer of the St. Louis County Police Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 14, 2012
Filed: August 29, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Johnny Briscoe sued St. Louis County and three of its police officers – Lane Hollandsworth, Stephen Deen, Sr., and Jack Webb – under 42 U.S.C. § 1983, alleging

they violated his constitutional rights by causing his wrongful conviction for rape and delaying his exoneration. After dismissing the County from the case, the district court[1] granted summary judgment to the individual defendants, dismissing all claims with prejudice. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In the early morning of October 21, 1982, a man broke into R.T.'s apartment raping her repeatedly at knifepoint. He spent between 45 and 60 minutes in her apartment, which was lit by a table lamp and parking-lot lights coming in the window. He wore gloves throughout the attack, smoked cigarettes with R.T., told her his name was Johnny Briscoe, and expressed a desire to start a relationship with her. He promised to return to her apartment. Although frightened, R.T. made an effort to study his face in order to later identify him. She remained lying in bed during the entire encounter.

R.T. called 911 as soon as he left. Officer Barry Armfield responded, taking an approximate description of the rapist so nearby officers could search for him. Officer Armfield's report described the rapist as a dark-complexioned black man, standing approximately 5'8", weighing around 130 pounds, and having a thin build, brown eyes, a two-inch Afro haircut, a moustache, and normal teeth. Other officers collected physical evidence from the apartment, including the cigarette butts and a strand of hair believed to be the rapist's. No usable fingerprints were found. An officer on the scene worked with R.T. on a composite sketch. While police were there, the rapist called R.T.'s apartment several times from a pay phone. Although he spoke with R.T. three times, an attempt to track him down failed. Armfield drove the victim to the hospital, where she met Detective Lane Hollandsworth, who took over the investigation.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

R.T. went directly from the hospital to a police station where Hollandsworth conducted a photo lineup for her. Hollandsworth showed her five head-shots, with Briscoe's face beside those of four men similar in appearance to Briscoe. Briscoe's photo showed him with brown eyes, an Afro, a mustache, and a goatee. It did not show his height, weight, or teeth. Although no one told R.T. that the rapist's picture might not be in the lineup, she was told not to guess. She immediately identified Briscoe, stating that she had no doubt it was him. After the identification, a piece of paper below the picture was removed, revealing Briscoe's name. He was arrested five days later on October 26.

At the time of his arrest, Briscoe – a black man – was 6'0", weighed 150 pounds, and had a thin build, a full goatee, and a gold front tooth. At Hollandsworth's direction Detective Steven Deen, Sr., attended a live lineup at the St. Louis city jail on October 27. Arriving at the jail, R.T. was told she needed to wait, because "he was eating." She assumed "he" referred to Briscoe (she knew he had been arrested). During the lineup, R.T. observed Briscoe and four others. She again immediately identified Briscoe as the rapist, again expressing no doubt. Briscoe was taller than the other four, the only one wearing a prison jumpsuit, and the only one who was in the earlier photo array. R.T. noticed his clothes were different, but did not recognize them as prison garb. The participants did not resemble each other; two wore hats. The lineup did not comply with the County's lineup policy, which required the participants to wear similar clothes.

At the jail, R.T. also confidently identified Briscoe's voice when the lineup participants were asked to speak. On November 5, tests on Briscoe's hair found it consistent with the hair from the apartment. No other tests were done on the physical evidence from the scene.

At about 2:00 a.m. on December 4, 1982 – six weeks after the attack, five weeks after Briscoe's arrest, but before his trial – Hollandsworth was at R.T.'s apartment. A man began knocking and banging on the door. Hollandsworth grabbed the man, took him into his custody, and questioned him. The man gave several aliases before giving his real name, Larry L. Smith. Hollandsworth called for a patrolman. Officer Michael John Busalaki responded, arresting Smith for trespassing and disturbing the peace. Hollandsworth told Busalaki he was there to assist the victim of a rape that had taken place weeks before.

During his deposition, Hollandsworth testified that it was common practice for him to provide emotional support to rape victims, even after a suspect's arrest. He stated that he went to R.T.'s apartment on the night of Smith's visit because R.T. was frightened by two anonymous phone calls. With Briscoe in jail, Hollandsworth had closed the investigation and did not go out of fear for her safety.

Officer Busalaki filed a report of the arrest, which described Smith as a black male, 5'7" tall, 130 pounds, with a two-inch black Afro haircut, a mustache, and normal teeth. The report listed Hollandsworth as the only reporting witness and contained a number of errors: Hollandsworth's name was spelled "Hollingsworth," the spellings of R.T.'s first and last names were each off by one letter, and R.T.'s apartment number was wrong. The report had its own complaint number, not the number of the rape investigation. Neither Hollandsworth nor Busalaki reported the incident to the prosecutor's office. Smith was never charged or prosecuted for trespassing or disturbing the peace. The parties dispute whether R.T. saw Smith during the incident. The report lists her as the "victim," but not as a witness. Viewing the evidence most favorably to Briscoe – the nonmovant – this court assumes she did not see him.

R.T. testified at trial that Briscoe was her attacker. Although he maintained his innocence at all times, he was convicted by a jury and sentenced to 45 years in prison.

In 2001, Briscoe invoked a new Missouri law to seek forensic DNA testing of evidence that could prove his innocence. Captain Jack Webb, the commander of the department's Bureau of Criminal Identification, received a request for the physical evidence in Briscoe's case, including the three cigarette butts from R.T.'s apartment. On March 19, 2002, Webb executed an affidavit stating that his staff conducted a thorough search but was unable to locate the cigarette butts. Webb did not search for the cigarette butts himself, and his affidavit did not claim he did.

Four years later, a second search uncovered the cigarette butts. DNA testing ruled out Briscoe as a DNA contributor, and identified Smith as a possible contributor. Briscoe was granted post-conviction relief in state court, found actually innocent, and released from custody after 23 years in prison.

In an affidavit after Briscoe's exoneration, R.T. stated that before her identifications she must have been pressured by the police to identify him as her attacker, noting that officers falsely told her that Briscoe was a dangerous man that had been released from a 10-year prison term just before the attack. She also related disparaging racial comments made by officers – including Hollandsworth – during the investigation, although she did not attribute any specific comment to Hollandsworth.

Briscoe sued Hollandsworth, Deen, Webb, and St. Louis County in federal court. The court dismissed the complaint against the County for failure to state a claim, granted summary judgment to the individual defendants, and denied as futile Briscoe's motion for leave to file an amended complaint against the County. On the basis of a post-judgment affidavit from R.T., Briscoe moved to alter or amend the judgment, which the district court denied. Briscoe appeals the grant of summary judgment against the individual defendants, the denial of his motion for leave to amend, and the denial of his motion to alter or amend the judgment.

II.

This court reviews de novo a grant of summary judgment, applying the same standard as the district court. *Estate of Pepper ex. rel. Deeble v. Whitehead*, 686 F.3d 658, 664 (8th Cir. 2012). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(c)(2)**. "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted), *quoting Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.*, *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).[2]

---

[2]Briscoe argues repeatedly that summary judgment is "particularly ill-suited" for § 1983 cases that involve the defendant's state of mind. In *Torgerson*, this court en banc made clear that "summary judgment is not disfavored and is designed for 'every action.'" *Id.* at 1043, *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Briscoe cites contradictory pronouncements that are no longer the law in this circuit. *E.g.*, *Pinnacle Pizza Co. v. Little Caesar Enters., Inc.*, 598 F.3d 970, 980 (8th Cir. 2010) ("[S]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." (internal quotation marks omitted)); *Freeman v. Blair*, 793 F.2d 166, 171 (8th Cir. 1986) ("Summary judgment is particularly ill-suited to resolve questions in which intent, good faith and other subjective feelings play dominant roles." (internal quotation marks omitted)); *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.").

## A.

Briscoe claims that Hollandsworth violated his due process right to a fair trial by (1) performing unduly suggestive identification procedures, (2) conducting a reckless investigation, and (3) withholding exculpatory evidence. "The general test of whether executive action denying a liberty interest is egregious enough to violate due process is whether it shocks the conscience." *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 956 (8th Cir. 2001), *citing County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Supreme Court and this court take a context-specific approach to determining what mens rea on the part of an officer shocks the conscience. *Id.* "In a § 1983 case an official 'is only liable for his own misconduct and is not 'accountable for the misdeeds of his agents' under a theory such as respondeat superior or supervisor liability." *Nelson v. Correctional Med. Servs.*, 583 F.3d 522, 534-35 (8th Cir. 2009) (alterations omitted), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009).

## 1.

"In the context of unduly suggestive lineups, only a violation of the core right – the right to a fair trial – is actionable under § 1983." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000). An identification procedure violates that core right if it is "both impermissibly suggestive *and* unreliable." *United States v. Martinez*, 462 F.3d 903, 911 (8th Cir. 2006), *quoting United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998). "An identification is unreliable if its circumstances create a very substantial likelihood of irreparable misidentification." *King*, 148 F.3d at 970. In determining reliability, courts examine the totality of the circumstances including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the

level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." ***Manson v. Brathwaite***, 432 U.S. 98, 114 (1977).

Briscoe argues that the photo array must have been suggestive because Briscoe did not closely match the description R.T. gave the officer at the scene. In support of that theory, Dr. Gary L. Wells wrote an expert report on eyewitness identifications, concluding that the photo and live lineups were suggestive and caused the erroneous identification. In his opinion, the only rational explanation for R.T.'s identifications of Briscoe was some undocumented, suggestive comment or behavior by Hollandsworth. However, R.T. is unable to attribute the few comments she does remember to any specific officer present during the photo array. (Hollandsworth was not present at the live lineup.) Even if there is some evidence of suggestiveness in the photo array, Briscoe does not provide evidence that Hollandsworth caused it. *See* ***Nelson***, 583 F.3d at 534-35 ("In a § 1983 case an official is only liable for his own misconduct . . . ." (internal quotation marks and alterations omitted)).

Even assuming Hollandsworth caused some degree of suggestiveness in the photo lineup, it did not violate Briscoe's constitutional rights. R.T.'s identification showed sufficient indicia of reliability to be admitted at trial without causing "a violation of the core right – the right to a fair trial." ***Pace***, 201 F.3d at 1055. She had ample opportunity to view her attacker during the prolonged and well-lit encounter. She focused on his face in order to identify him later. Her pre-identification description of her attacker's face was fairly consistent with Briscoe's photo. R.T. expressed complete confidence in her identification, which she made immediately upon viewing Briscoe's photo. And, she made the identification within hours of the attack. *See* ***Neil v. Biggers***, 409 U.S. 188, 200-01 (1972) (finding an identification reliable where a rape victim spent 15-30 minutes with her attacker, viewed him closely first under light from a different room and then moonlight, heard his voice, identified him in showup almost seven months later, and expressed no doubt in her

identification). R.T.'s identification of Briscoe may have been in error, but the error was not the result of an unconstitutional photo lineup.

2.

Briscoe argues that Hollandsworth violated his constitutional rights by concealing the December 4, 1982, incident. According to Briscoe, Hollandsworth recognized Smith as a suspect in R.T.'s rape when he knocked on her door. Then, Hollandsworth intentionally misreported enough facts to Busalaki to conceal the event from Briscoe and the prosecutors, and to prevent any discipline for his presence at a victim's home at two in the morning.

An investigating officer violates a defendant's due process rights if the officer fails to disclose or preserve potentially exculpatory evidence in bad faith. ***Villasana v. Wilhoit***, 368 F.3d 976, 980 (8th Cir. 2004), *citing **Arizona v. Youngblood***, 488 U.S. 51, 58 (1988). "[T]he recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor intended to deprive the defendant of a fair trial." ***White v. McKinley***, 519 F.3d 806, 814 (8th Cir. 2008) (alteration in original), *quoting **Villasana***, 368 F.3d at 980. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on *the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed*." ***Youngblood***, 488 U.S. at 56 n.* (emphasis added).

In hindsight, the exculpatory value of the appearance at R.T.'s door of Smith – who we now know was the rapist – is readily apparent. The relevant inquiry, however, is what Hollandsworth knew on December 4, 1982. *See **id.*** ("The possibility that the [evidence] could have exculpated [the defendant] if preserved or tested is not enough . . . ."). It is undisputed that at that time – six weeks after the attack – the rape investigation was considered complete, she had positively identified the same suspect

in two lineups, and that suspect was in jail awaiting trial. The investigators were not seeking additional suspects.

Briscoe argues that Hollandsworth knew the potentially exculpatory nature of Smith's visit, because Smith gave several aliases before admitting his real name, he fit R.T.'s description of the rapist better than Briscoe, and Hollandsworth knew about the rapist's promise to return. The last contention is undercut by the fact repeated throughout Briscoe's brief that "Hollandsworth had closed the investigation weeks before December 4, 1982, and acknowledged that he did not go to R.T.'s home that night because he thought she was in danger" from the rapist's potential return. Without more, no reasonable jury could find that Hollandsworth knew the exculpatory value of Smith's visit to R.T.'s apartment, without resorting to speculation. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) ("A mere 'scintilla of evidence' is insufficient to defeat summary judgment . . . ."), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Briscoe also contends that Busalaki's report is proof that Hollandsworth knew Smith's appearance was potentially exculpatory, because the mistakes in it show that Hollandsworth – the report's only listed witness – tried to bury it. However, the mistakes were minor (for example, R.T.'s last name was written as a more common surname one interior letter different than hers). The report included several other details linking the incident to Hollandsworth and R.T. (including that she was a recent rape victim and he was the investigating officer). Busalaki testified that he wrote all of the information in the report and any mistakes were his own. Briscoe urges this court to ignore that testimony as self-serving and lacking credibility because it was offered decades after the report. Even if this court were to do so, Briscoe identifies nothing beyond speculation that Hollandsworth intentionally injected the mistakes into the report to prevent its discovery.

-10-

There is no material issue of fact whether Hollandsworth knew that the December 4, 1982, incident was exculpatory evidence in Briscoe's trial. Briscoe's claim is insufficient as a matter of law under *Arizona v. Youngblood*.[3]

3.

This court "recognized a substantive due process cause of action for reckless investigation in *Wilson . . .* , where we identified the liberty interest at stake as the 'interest in obtaining fair criminal proceedings.'" **Amrine v. Brooks**, 522 F.3d 823, 833 (8th Cir. 2008), *citing* **Wilson**, 260 F.3d at 956 n.8.

Briscoe focuses his reckless investigation claim on the December 4, 1982, incident, arguing that Hollandsworth purposely ignored exculpatory evidence. At worst, Hollandsworth's failure to identify Smith as a possible suspect was negligent. "An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." **Akins v. Epperly**, 588 F.3d 1178, 1184 (8th Cir. 2009).

The district court did not err in granting summary judgment to Hollandsworth.

B.

Briscoe claims Deen violated his due process rights by conducting an impermissibly suggestive live lineup. Like the photo lineup, the live lineup is only unconstitutional if it was "both impermissibly suggestive *and* unreliable." **Martinez**, 462 F.3d at 911. Briscoe claims the lineup was suggestive because Briscoe was the only lineup participant whose photo was in the array, R.T. was told that she identified

---

[3]The bulk of Briscoe's brief and oral argument lay out possible motives for Hollandsworth's intentional withholding of exculpatory evidence. Because Briscoe failed to show that Hollandsworth knew the evidence was exculpatory, this court need not address Briscoe's arguments for why Hollandsworth would have withheld it if he did.

Briscoe's photo at the earlier lineup and expected him to be in the lineup, the other participants in the lineup did not resemble him in appearance or clothing, and the lineup violated County policy. Together, these facts do not demonstrate that the lineup was unduly suggestive. Participants in a lineup do not have to have identical characteristics. *See United States v. Lewis*, 547 F.2d 1030, 1035 (8th Cir. 1976). The County policy does not dictate federal constitutional standards. *See Scheeler v. City of St. Cloud*, 402 F.3d 826, 835 (8th Cir. 2005). Without more, the fact that Briscoe was the only person in both lineups is not enough to establish suggestiveness. *See Armstrong v. Gammon*, 195 F.3d 441, 445 (8th Cir. 1999).

Also, despite any suggestiveness the identification was sufficiently reliable. R.T. had ample opportunity to view the rapist during the prolonged, well-lit encounter. She focused on his face in order to identify him later. Her pre-identification description of her attacker was fairly consistent with Briscoe, though inconsistent with his height and weight. R.T. expressed complete confidence in her identification, made only one week after the attack. *See also* **Part II.A.1**.

Briscoe claims that Deen's activities must be viewed within the context of Hollandsworth's activities. As noted, the evidence was insufficient for a reasonable jury to find that Hollandsworth violated Briscoe's constitutional rights, and even it were, Deen cannot be held liable for the misdeeds of others. *See Nelson*, 583 F.3d at 534-35.

The district court did not err in granting summary judgment to Deen.

C.

Briscoe claims Webb violated his constitutional rights by "swearing to the truth of factual statements that proved to be false and that would determine whether a prison inmate who might be innocent went free or remained in custody." However, there is no evidence in the record that Webb signed a false affidavit. The affidavit he

signed stated that the cigarette butts were not found after a search by three members of his staff. Briscoe does not cite to any evidence that Webb's staff did not conduct a search. Brirscoe only speculates that they must not have searched since the cigarette butts were later located. There is no material issue of fact as to the affidavit's falsity. The district court did not err in granting summary judgment to Webb.

III.

"When the court denies leave [to amend] on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and appellate review of this legal conclusion is de novo." *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) (alterations omitted), *quoting* *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008).

Briscoe sought leave to amend his complaint against the County in order to remedy the insufficiencies that caused its dismissal. *See* *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) ("A claim [under § 1983] against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice."), *citing* *Monell v. Department of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978). "To establish municipal liability, [Briscoe] must first show that one of the municipality's officers violated h[is] federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). The proposed amended complaint alleges violations by four officers: Hollandsworth, Deen, Webb, and Busalaki. As noted, Briscoe failed as a matter of law to establish a violation by Hollandsworth, Deen, or Webb. The complaint alleges Busalaki violated Briscoe's constitutional right to a fair trial by failing to take R.T.'s statement during the December 4, 1982, incident, preventing the disclosure of potentially exculpatory evidence. However, the proposed complaint does not allege that Busalaki acted in bad faith and thus fails to state a constitutional violation. *See* *Youngblood*,

-13-

488 U.S. at 58. Briscoe's amended complaint would not survive a 12(b)(6) motion to dismiss. The district court did not err in denying the motion for leave on the basis of futility.

IV.

Briscoe appeals the district court's denial of his motion to alter or amend its judgment. Rule 59(e) authorizes a district court to alter or amend a judgment based on newly discovered evidence. *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413-14 (8th Cir. 1988). Briscoe based his motion on R.T.'s post-judgment affidavit describing an affair with Hollandsworth.

This court reviews a denial of a Rule 59(e) motion for abuse of discretion. *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *Id.*

> To succeed on a Rule 59(e) motion, the movant must show (1) the evidence was discovered after the summary judgment hearing; (2) the movant exercised due diligence to discover the evidence before the end of the summary judgment hearing; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new hearing considering the evidence would probably produce a different result.

*Callanan v. Runyan*, 75 F.3d 1293, 1297 (8th Cir. 1996) (alterations and internal quotation marks omitted). The district court did not abuse its discretion in denying Briscoe's motion to alter or amend its judgment, because he cannot satisfy the due diligence requirement.

In 2006, Briscoe received information from a "reliable source" that Hollandsworth had an affair with R.T. after his indictment (but before his conviction).

-14-

In 2009, Briscoe deposed R.T., asking only the following questions about her relationship with Hollandsworth:

> Q.    [BRISCOE'S COUNSEL]: . . . At the very bottom of the page [of R.T.'s statement] there's reference to Hollandsworth was at my apartment most often.  Do you see that?
>
> A.    [R.T.]:  Yeah.
>
> Q.    Okay.  Can you tell us how often he was there?
>
> A.    Well, not really, but he, I guess, worked that 3:00 to 11:00 shift, because I saw the most of him and the most – well, I saw the most of all of them, but it seemed like he was there.
>
>           . . .
>
> Q.    [BRISCOE'S COUNSEL]:  Now further on in your statement you said on Monday or Tuesday you went to Steak'n Shake with Detective Hollandsworth?
>
> A.    [R.T.]:  Right.
>
> Q.    And what did you discuss at Steak'n Shake?
>
> A.    Gosh.  Not a heck of a whole lot, because I'm scared to be out in public. The case, you know.
>
>           . . .
>
> Q.    [BRISCOE'S COUNSEL]: And next you say, "Sometimes he, Detective Hollandsworth, came at midnight, and other times earlier"; is that correct?
>
> A.    [R.T.]: Yes, sir.

Briscoe should have fully explored the affair with R.T. before the summary judgment hearing. *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1036 (8th Cir. 2007).  To exercise due diligence an attorney must "ask the right questions" in a deposition. *Baxter Int'l, Inc. v. Morris*, 11 F.3d 90, 93 (8th Cir. 1993).  According to R.T.'s affidavit, she denied the alleged affair when asked by Briscoe's counsel before her deposition.  However, R.T.'s previous denials do not excuse Briscoe's failure to ask during her deposition.  In her affidavit, she does not state she would

have denied the affair if asked under oath; the only time R.T. said anything under oath about the affair – in her affidavit – she acknowledged its existence.

Briscoe argues he exercised due diligence by asking Hollandsworth about the affair during his deposition (he denied an affair). That might have been enough if Hollandsworth were the only witness with potential knowledge of the affair, or if he were the one now acknowledging it in the post-judgment affidavit. Due diligence required Briscoe to ask the witness now confessing the affair about it under oath before the summary judgment hearing. Briscoe has not advanced a persuasive explanation for failing to produce evidence of Hollandsworth's affair with R.T. before the hearing. *See **Metropolitan St. Louis Sewer Dist.***, 440 F.3d at 935.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____