# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3232
_____

Oakley Bernard Engesser

*Plaintiff – Appellant*

v.

Trooper Edward Fox, of the South Dakota Highway Patrol, in his individual capacity; Michael Kayras, Trooper Fox's supervisor, in his individual capacity; Jennifer Utter, Meade County States Attorney; Gordon Swanson, Meade County States Attorney; Amber Richey, Meade County Assistant States Attorney; Meade County

*Defendants – Appellees*

_____

Appeal from United States District Court
for the District of South Dakota – Rapid City

_____

Submitted: October 22, 2020
Filed: April 7, 2021

_____

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

After spending more than 10 years in prison, Oakley Engesser was released when new evidence suggested that he was not the driver of a vehicle that caused a fatal accident. Not long after, he filed a lawsuit alleging that the investigating

officers had violated his constitutional rights. *See* 42 U.S.C. § 1983. The district court[1] dismissed the lawsuit at summary judgment, and we affirm.

## I.

Engesser and Dorothy Finley left the Full Throttle Saloon in a red Corvette. Seen traveling at high speed, the Corvette eventually hit a minivan and rolled a few times before coming to rest on its roof in the median of a highway. Engesser, who had been thrown from the vehicle, was found several feet away from the driver's side door. Finley, pronounced dead at the scene, was trapped inside the vehicle on the passenger side. There was one unknown for law enforcement. Who had been driving, Engesser or Finley?

Based primarily on the physical evidence at the scene, Trooper Edward Fox concluded it was Engesser. He reached this conclusion for three main reasons: (1) Engesser was found outside the vehicle on the driver side; (2) Finley had been trapped inside on the passenger side; and (3) the injuries both suffered were consistent with where they were found. A jury eventually agreed with Fox's assessment and found Engesser guilty of one count of vehicular homicide and two counts of vehicular battery. *See State v. Engesser*, 661 N.W.2d 739, 742–43 (S.D. 2003) ("*Engesser I*").

Engesser spent the next decade trying to prove his innocence. He finally succeeded in overturning his convictions in 2014, when a South Dakota trial court granted habeas relief after several witnesses came forward to testify that a woman had been driving the Corvette. The South Dakota Supreme Court affirmed, holding that, in light of the new evidence, "no reasonable juror would have found [Engesser]

---

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

guilty of the underlying offense." *Engesser v. Young*, 856 N.W.2d 471, 484 (S.D. 2014) ("*Engesser II*").

It was not long before Engesser filed a federal lawsuit against Trooper Fox and his supervisor, Michael Kayras, for violating his constitutional rights. *See* 42 U.S.C. § 1983. The complaint alleged, among other things, that they had recklessly investigated the case by ignoring evidence, failing to interview witnesses, and carelessly storing the Corvette. Also included were a failure-to-supervise claim against Kayras and a civil-conspiracy claim.

None of these claims made it past summary judgment. As relevant here, the district court determined that Trooper Fox was entitled to qualified immunity and that the other claims failed for, among other reasons, the absence of a constitutional violation.

## II.

We review the district court's decision to grant summary judgment de novo. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment [was] appropriate [if] the evidence, viewed in [the] light most favorable to [Engesser], show[ed] no genuine issue of material fact exist[ed] and the [defendants were] entitled to judgment as a matter of law." *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002).

## A.

For Engesser's reckless-investigation claims, the analysis comes down to two questions. First, did Trooper Fox or his supervisor violate a constitutional right? Second, was the right clearly established? *See Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). If the answer to either question is "no," we will affirm.

*See id.* (explaining that we may answer the qualified-immunity questions in either order).

1.

To be liable under a reckless-investigation theory, Trooper Fox must have conducted a constitutionally deficient investigation—one that was so deficient, in fact, that it "shock[ed] the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009); *see* U.S. Const. amend. XIV. To meet this standard, a plaintiff must show reckless or purposeful misconduct, not mere negligence. *See Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012).

We have allowed claims of this type to proceed when there is evidence that an investigator: (1) "attempted to coerce or threaten the defendant"; (2) "purposefully ignored evidence suggesting the defendant's innocence"; or (3) encountered "systematic pressure to implicate the defendant in the face of contrary evidence." *Akins*, 588 F.3d at 1184; *see also Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (explaining that this is "a question of law to which we apply a rigorous standard"). The record in this case is devoid of evidence of threats, coercion, or systematic pressure, so the issue for us is whether Trooper Fox or his supervisor recklessly[3] or purposefully ignored evidence suggesting that Finley was the driver. *See Akins*, 588 F.3d at 1184.

Engesser first argues that Trooper Fox ignored what eyewitnesses at the scene had to say. Construing the facts in Engesser's favor, one of them used female

---

[3]As we have explained, "*purposefully* ignor[ing] evidence suggesting the defendant's innocence," *Akins*, 588 F.3d at 1184 (emphasis added), is a "tell-tale sign[] of a *reckless* investigation," *Dean v. Searcey*, 893 F.3d 504, 514 (8th Cir. 2018) (emphasis added). Just like purposefully ignoring evidence might lead to the conclusion that an officer's investigation was reckless, so too might recklessly ignoring evidence lead to the conclusion that an officer's investigation, considered

-4-

pronouns to describe the driver and another told Fox that a woman had been driving the Corvette earlier in the day. Based on this evidence, Engesser believes it was conscience shocking for Fox to conclude that he, rather than Finley, had been driving.

Even if Trooper Fox could have conducted a more thorough investigation, there is no evidence that he recklessly or purposefully ignored these eyewitnesses. *See Akins*, 588 F.3d at 1184; *Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 702 (8th Cir. 2020) (holding that a "questionable or incomplete" investigation is not conscience shocking "as a matter of law" (quotation marks omitted)). A failure to ask the right questions and to reconcile inconsistent evidence may be shoddy police work, but in this case, it reflects nothing more than negligent or grossly negligent conduct. *See Johnson*, 903 F.3d at 773 (ignoring "factual inconsistencies" and "negligently fail[ing] to look into leads" is not enough to show "reckless, conscience-shocking" conduct); *see also Amrine*, 522 F.3d at 833 (holding that even gross negligence is not enough). After all, faced with conflicting information, investigators sometimes have no choice but to "discount[]" witness statements that

---

as a whole, was less than reckless. The reason is that, to be actionable, the investigation *itself* must shock the conscience, "a rigorous standard." *Johnson*, 903 F.3d at 773; *see also Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1069 (7th Cir. 2012) ("[T]he inquiry involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements." (internal quotation marks omitted)); *Davis v. White*, 794 F.3d 1008, 1015 (8th Cir. 2015). To the extent the concurrence insists that "recklessly ignor[ing] evidence [of] innocence" may be enough, we note that it makes no difference here. *Winslow*, 696 F.3d at 734; *see id.* at 736 (concluding that officers had *purposefully* ignored exculpatory evidence and coerced witnesses into providing false testimony); *see also Wilson v. Lawrence Cnty.*, 260 F.3d 946, 957 (8th Cir. 2001) (deciding that recklessness was enough when officers failed "to investigate [other] lead*s*" in light of the fact that all they had was "an involuntary confession and no reliable corroborating evidence" (emphasis added)). The investigators in this case, as we conclude below, neither purposefully *nor* recklessly ignored evidence. *See Wilson*, 260 F.3d at 957. At most, they were grossly negligent. *See id.* at 955.

"do not fit with the evidence [found] at the scene of the crime." *Winslow*, 696 F.3d at 734.

Failing to locate an unavailable witness does not qualify as recklessly or purposefully ignoring evidence either. During the investigation, Trooper Fox received a tip that a security guard at the Full Throttle Saloon saw Finley driving when she and Engesser left the bar that day. The security guard had fled the jurisdiction, however, to elude an arrest warrant. It was not until years later, shortly before Engesser's habeas proceedings, that the security guard resurfaced and agreed to testify. *See Engesser I*, 661 N.W.2d at 751–53; *Engesser II*, 856 N.W.2d at 475. Perhaps Fox could have done more to find him, but his failure to do so did not "shock the conscience." *Kingsley*, 964 F.3d at 701; *see also Folkerts v. City of Waverly*, 707 F.3d 975, 981 (8th Cir. 2013) (holding that it did not shock the conscience for an investigator to negligently fail to interview the alleged victim or other potential witnesses).

Nor did Trooper Fox's failure to ask additional questions at the scene shock the conscience. Key to Fox's conclusion about the identity of the driver was where the vehicle's occupants were found: Engesser near the open driver's side door and Finley trapped on the passenger side. Had Fox asked more questions, according to Engesser, he never would have assumed that the driver's side door opened *during* the accident, because he would have known that a passerby opened it *later*.

It is true that this discovery could have changed the course of the investigation. But by the time Trooper Fox arrived, the passerby was already gone. He had opened the door to check on Finley, but quickly left once he saw that she was no longer alive. It is undisputed that no one told Trooper Fox how the door opened or who opened it, and like the security guard, the passerby only came forward years later. A failure to interview an *unknown* witness does not "shock the conscience." *Kingsley*, 964 F.3d at 701. After all, Fox first had to know about a lead before he could recklessly or purposefully ignore it. *See id.*; *Winslow*, 696 F.3d at 734. The

-6-

bottom line is that, even if his assumption about how the door opened turned out to be mistaken, in the absence of any contrary evidence, he "was, at most, negligent." *Kingsley*, 964 F.3d at 701. And as we already know, negligence is not enough. *See Akins*, 588 F.3d at 1184.

2.

The officers' decision to leave the Corvette at a local impound lot also did not rise to the level of reckless or purposeful misconduct. *See Winslow*, 696 F.3d at 732. Engesser argues that the recklessness of Trooper Fox and his supervisor can be inferred through their "lackadaisical attitude" toward its storage. Specifically, they allowed the vehicle to be kept outside and did not prevent Finley's family from accessing it and removing evidence.

Even if we were to assume that the proper lens for analyzing this lost-evidence claim is substantive due process, neither of these actions demonstrate that the officers recklessly or purposefully destroyed evidence. *See generally White v. McKinley*, 519 F.3d 806, 813–14 (8th Cir. 2008) (analyzing an "investigating officer's failure to preserve evidence potentially useful to the accused" under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963)). Both were unaware that the impound lot would allow Finley's daughter to remove items from the vehicle. And, as the South Dakota Supreme Court observed, failing to ensure that the vehicle would be kept inside or otherwise protected from the elements could "only be deemed negligent." *Engesser I*, 661 N.W.2d at 755.

B.

The failure to establish a constitutional violation also spells the end for Engesser's remaining claims. To prevail on a theory of supervisory liability, he had to prove that Kayras "directly participate[d] in a constitutional violation or [that he] fail[ed] to properly supervise and train" Trooper Fox. *Andrews v. Fowler*, 98 F.3d

-7-

1069, 1078 (8th Cir. 1996). There is no proof, as we conclude above, that Kayras directly violated Engesser's rights. And in the absence of *any* "underlying constitutional violation" by Fox, the failure-to-supervise claim "automatically fail[s]." *Henry v. Johnson*, 950 F.3d 1005, 1015 (8th Cir. 2020) (quotation marks omitted).

We reach a similar conclusion about the conspiracy claim. To prevail, Engesser had to prove, among other elements, the "deprivation of a constitutional right or privilege." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). With no "actual deprivation" here, there can be no liability. *Kingsley*, 964 F.3d at 702–03 (quotation marks omitted); *see Henry*, 950 F.3d at 1015.

III.

We accordingly affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in all but footnote three, which is unnecessary to the decision.

As the opinion states, *ante*, at 4, a plaintiff alleging a constitutional violation based on an officer's alleged failure to investigate "must show reckless or purposeful misconduct, not mere negligence." In *Akins v. Epperly*, 588 F.3d 1178 (8th Cir. 2009), the court said that purposefully ignoring evidence suggesting a defendant's innocence is one of several circumstances that "indicate reckless or intentional failure to investigate that shocks the conscience." *Id*. at 1184. *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001), held that subjective recklessness was the proper standard to apply in evaluating an alleged failure to investigate in that case, because the officers "had the luxury of unhurried judgments and repeated reflections." *Id*. at 956-57 & n.9. "The Supreme Court and this court take a context-specific approach to determining what mens rea on the part of an officer shocks the

conscience." *Briscoe v. County of St. Louis*, 690 F.3d 1004, 1011 (8th Cir. 2012); *see County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Evidence of negligence or gross negligence, however, is not enough to establish a constitutional violation. *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008).

Although the opinion provides that "the issue for us is whether Trooper Fox or his supervisor recklessly or purposefully ignored evidence" of innocence, footnote three then includes the following deduction: because *Dean v. Searcey*, 893 F.3d 504 (8th Cir. 2018), said that purposefully ignoring evidence is a sign of a reckless investigation, recklessly ignoring evidence could indicate a non-reckless investigation. The premise is flawed. The truncated quotation from *Dean* says this in full: "In *White*, we found that one of the tell-tale signs of a reckless investigation was 'evidence that investigators purposefully ignored evidence suggesting the defendant's innocence.'" 893 F.3d at 514. But the cited decision, *White v. Smith*, 696 F.3d 740 (8th Cir. 2012), actually said the following: "We have also previously recognized that the following circumstances indicate conscience-shocking behavior in the context of a reckless *or intentional failure to investigate claim*: '(1) . . . , (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) . . . .'" *Id*. at 758 (emphasis added) (quoting *Akins*, 588 F.3d at 1184). In other words, *White*, like *Akins*, allowed that purposefully ignoring evidence indicates an intentional failure to investigate. *Dean*'s misdescription of *White* should not take on a life of its own.

The footnote also introduces a new concept: proof that an officer recklessly ignored evidence of a suspect's innocence could lead to a conclusion that the officer did not recklessly fail to investigate. If an officer performs non-reckless work during some of an investigation, but recklessly ignores evidence that would exonerate the suspect, the officer would not exhibit a culpable mental state if the "investigation, considered as a whole," was not reckless. None of our cases has followed that approach, and the opinion in this case does not either.

The *dicta* in footnote three have no bearing on this appeal. A plaintiff like Engesser must show that he was injured because an officer, acting with a sufficiently culpable state of mind, engaged in official action that shocks the conscience—a demanding standard that is satisfied only by "patently egregious" conduct. *Lewis*, 523 U.S. at 850. The evidence here is insufficient to show that the defendants engaged in purposeful or subjectively reckless misconduct that shocks the conscience, so the claim fails under either standard of culpability.

———————————————