# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1083

_____

Melvin Folkerts; Idella Folkerts

*Plaintiffs - Appellants*

v.

City of Waverly, Iowa; Troy Schneider, in his individual and official capacities

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: October 16, 2012
Filed: February 25, 2013

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Melvin and Idella Folkerts are the legal guardians and conservators of their adult son, Travis Michael Folkerts. In May 2008, Travis[1] was investigated and charged with sexual assault. Alleging deprivation of his constitutional and statutory

---

[1]The Folkertses are referenced individually by their first names. No disrespect is intended.

rights, the Folkertses sued the City of Waverly, Iowa, and Troy Schneider, an investigator with the police department. The district court[2] granted summary judgment to the defendants. The Folkertses appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Travis, now in his 30s, has an intellectual disability, diagnosed as mental retardation. A psychologist characterized his mental retardation as "severe," with an IQ of 50, below the 0.1 percentile. The psychologist reported that his disability "would be obvious to anyone, including any police officer, who engaged in conversation with Travis."

In May 2008, Travis lived alone in an apartment but had supervision most waking hours. On May 11, Travis's neighbor reported that Travis had engaged in inappropriate conduct with her son. A patrol officer, who knew Travis had a disability, spoke with the complainants and called Schneider for advice. The officer then spoke with Travis, who was alone. At the officer's request, Travis provided a phone number for his caseworker. The officer read Travis his *Miranda*[3] rights and asked if he understood them; Travis said "yes." After interviewing Travis, the officer left a voicemail with the caseworker and submitted an "Information Only" report to Schneider for follow-up.

The next day, Schneider went to Travis's apartment; Travis was alone. Schneider said he read Travis his *Miranda* rights and more fully explained them "[t]o

---

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

[3]***Miranda v. Arizona***, 384 U.S. 436 (1966).

accommodate for his limitations." Schneider knew Travis had a mental disability but claims not to have known his "full limitations." Schneider believed that Travis understood his rights. Schneider continued the interrogation at the police station, where he interrogated Travis in a conference room that Schneider believed was less intimidating than the station's regular, smaller interview room. Schneider asked non-leading questions "because it seemed apparent that it would be easy to get him to say something that he did not do." According to Schneider's report, he asked about ten leading questions.

At Travis's request, Schneider phoned Idella Folkerts. She spoke with Travis, who said he was "nervous." She then spoke with Schneider. Schneider reported that Idella

> asked if I [Schneider] wanted her to come down and I said she could if she wanted and that it was up to her. She said that she thought [Travis] would be less nervous and it would be best if I spoke to him without her there. I said that he seemed pretty nervous and that if her being there would make him worse then I would rather she not be there.

When Idella told Schneider her presence might further upset Travis, she claims Schneider "said okay and hung up." The Folkertses claim that Schneider never told Idella on the phone that Travis was in legal trouble or would be or was being interrogated. Schneider continued his interrogation. Travis incriminated himself. Schneider drove Travis to the Folkertses's home and explained the situation to them. Schneider arranged alternative and friendlier booking procedures, and one parent accompanied Travis during booking.

Schneider consulted with the county attorney and filed a complaint charging Travis with lascivious conduct with a minor, a misdemeanor. An Iowa court found him incompetent to stand trial and dismissed the case.

-3-

The Folkertses sued under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. The district court granted summary judgment to the defendants. On appeal, the Folkertses claim Fourteenth Amendment substantive-due-process violations under § 1983, and assert direct actions for disparate treatment and failure to make reasonable accommodations under the ADA and Rehabilitation Act.

"This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (en banc), *cert. denied*, 132 S. Ct. 513 (2011). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. *Id.*. This court views the facts most favorably to the plaintiffs and takes as true those facts asserted by the plaintiffs that are properly supported in the record. *Akins v. Epperly*, 588 F.3d 1178, 1182 (8th Cir. 2009).

II.

The Folkertses allege that Schneider violated Travis's right to substantive due process. Schneider asserts qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court examines (1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful. *See McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

To establish a substantive due process violation, the Folkertses must demonstrate that a fundamental right was violated and that Schneider's conduct shocks the conscience. *Akins*, 588 F.3d at 1183. "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Whether conduct shocks the conscience is a question of law. *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc).

> Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. *Lewis*, 523 U.S. at 848-49. The deliberate indifference standard "is sensibly employed only when actual deliberation is practical." *Lewis*, 523 U.S. at 851. By contrast, the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.

*Id.* at 978 (some internal quotation marks and citations omitted). "In applying the *Lewis* [intent-to-harm] standard, 'only a purpose to cause harm *unrelated to the legitimate object of* [the government action in question] will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.'" *Helseth v. Burch*, 258 F.3d 867, 872 (8th Cir. 2001) (en banc), *quoting Lewis*, 523 U.S. at 836. The Folkertses cite Schneider's (1) failure to accommodate Travis's disability during the interrogation; (2) inadequate investigation; (3) investigation of Travis to retaliate against Travis's relatives; and (4) charging decision.[4]

---

[4]The Folkertses appear to argue that Schneider attempted to obtain and accept a *Miranda* waiver from Idella during their phone call. To the contrary, Schneider

-5-

Even if Schneider's behavior violated Travis's fundamental rights, it does not shock the conscience. First, Schneider's behavior during the interrogation does not shock the conscience: he altered his questioning style, more fully explained the *Miranda* rights, and interviewed Travis in a less intimidating room. Most importantly, Schneider called Idella at Travis's request and invited her to the police station. Schneider's behavior during the interrogation does not shock the conscience.

Second, the adequacy of Schneider's investigation does not shock the conscience. The Folkertses argue that Schneider should have interviewed the alleged victim, Travis's caseworker, and the apartment manager. A negligent failure to investigate inconsistencies or other leads does not violate due process. *Akins*, 588 F.3d at 1184. A plaintiff must demonstrate an intentional or reckless failure to investigate. *Amrine v. Brooks*, 522 F.3d 823, 834 (8th Cir. 2008). Investigators shock the conscience when they (1) attempt to coerce or threaten the criminal defendant, (2) purposefully ignore evidence of the defendant's innocence, or (3) systematically pressure to implicate the defendant despite contrary evidence. *Akins*, 588 F.3d at 1184. The patrol officer interviewed the alleged victim and his mother and visited the scene. Schneider reviewed the officer's report, spoke with the victim's mother, and interrogated Travis. Schneider's failure to interview the alleged victim, Travis's caseworker, or Travis's apartment manager does not establish an intentional or reckless failure to investigate. Any inadequacy of Schneider's investigation does not shock the conscience.

Third, the Folkertses do not present conscience-shocking evidence that Schneider investigated Travis to retaliate against Travis's relatives. In 2007, Schneider investigated a burglary of a business owned by Travis's cousin's wife.

---

made no attempt to obtain a *Miranda* waiver from her during their phone call, as Schneider believed that Travis personally waived his rights (and the Folkertses agree that *Miranda* was not discussed during the call).

During that investigation, Schneider reportedly failed to pursue a lead and was rude to Travis's cousin.[5] In January 2008, Travis's relatives met with Schneider and his superiors. The Folkertses claim that the city administrator was "agitated" with Schneider at the meeting. In Schneider's July 2008 Performance Appraisal, his captain wrote about "very minor" instances where Schneider's "emotions have a negative effect on job performance." At his deposition, the captain said a specific instance mentioned in Schneider's Appraisal "may have" referred to the burglary investigation but he could not say "specifically if that's the case or not." Schneider testified he did not know the specific instance to which the Appraisal referred, but he was "sure [the burglary investigation was] part of it." There is no conscience-shocking evidence that Schneider retaliated by investigating Travis.

Fourth, Schneider's "charging decision" does not shock the conscience. Schneider filed a complaint alleging that Travis violated Iowa Code § 709.14. The Folkertses argue that Schneider recited no evidence that Travis was "in a position of authority" over the alleged victim, an element of the crime.[6] The Folkertses do not cite, and this court has not found, a case interpreting the element before Schneider filed his complaint. Schneider sought the advice of the county attorney before filing his complaint (and later testified that Travis's superior size placed him in a position

---

[5]The Folkertses present an affidavit from Travis's aunt. Her "conclusion" that the burglary investigation and Travis's arrest "were related" is mere speculation. *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (holding that the nonmoving party must substantiate its allegations with sufficient probative evidence to permit a finding in its favor "based on more than mere speculation, conjecture, or fantasy.").

[6]The Folkertses argue that Schneider recited no evidence of the element in the trial information. Schneider did not file it; the county attorney did. Absent a specific allegation, such as presenting false evidence or withholding evidence, the prosecutor's independent action insulates the officer from liability. *See Ames v. United States*, 600 F.2d 183, 185 (8th Cir. 1979); *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

of authority over the alleged victim). *See Frye v. Kansas City Mo. Police Dep't*, 375 F.3d 785, 792 (8th Cir. 2004) ("Although following an attorney's advice does not automatically cloak officers with qualified immunity, it can show the reasonableness of the action taken." (internal quotation marks and alterations omitted)). Schneider's behavior does not shock the conscience.

The district court correctly granted summary judgment to Schneider.

III.

The Folkertses allege that the city's "culture of indifference" to the disabled shows its "deliberate indifference" to Travis's rights. In limited circumstances, a local government may be liable for its "decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The failure to train must rise to "deliberate indifference" to be actionable. *Id.* A pattern of similar constitutional violations by untrained employees is ordinarily necessary to show deliberate indifference. *Id.* at 1360. It may be, however, that "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997).

The Folkertses have not alleged a pattern of similar constitutional violations; they appear to argue that this is one of the "narrow range of circumstances" where the violation of federal rights is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* In this case, however, the Folkertses have not alleged even a single violation of rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a

-8-

constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability."); *cf. **Speer v. City of Wynne, Ark.***, 276 F.3d 980, 986 (8th Cir. 2002) (noting that there may be situations "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation"). The district court correctly granted summary judgment to the city.[7]

IV.

The Folkertses assert direct actions against both Schneider and the city for disparate treatment and failure to make reasonable accommodations, in violation of § 504 of the Rehabilitation Act and Title II of the ADA. For a prima facie § 504 violation, a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds. ***M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721***, 326 F.3d 975, 981-82 (8th Cir. 2003). For a prima facie Title II ADA violation, a qualified individual with a disability must be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or be otherwise discriminated against by the entity, by reason of the individual's disability. ***Layton v. Elder***, 143 F.3d 469, 472 (8th Cir. 1998). "The ADA and § 504 of the Rehabilitation Act are 'similar in substance' and, with the exception of the Rehabilitation Act's federal funding requirement, 'cases interpreting either are applicable and interchangeable' for analytical purposes." ***Bahl v. County of Ramsey***, 695 F.3d 778, 783 (8th Cir. 2012), *quoting **Randolph v. Rodgers***, 170 F.3d 850, 858 (8th Cir. 1999).

---

[7]As discussed, no reasonable jury could find that Schneider investigated Travis in retaliation against Travis's family. The city did not, as the Folkertses allege, violate Travis's rights by failing to disclose to the county attorney its knowledge of Schneider's "response to the criticism" for his burglary investigation.

Title II of the ADA applies to an arrestee's post-*Miranda* interview. *Id.* at 788 (reversing summary judgment to defendant city on hearing-impaired plaintiff's claim that defendant failed to provide a custodial interrogation because of plaintiff's disability). The city and its police department receive federal funds. Travis is a qualified individual with a disability. *See* **42 U.S.C. § 12102** (defining disability generally for ADA purposes); **§ 12131(2)** (defining the category within Title II); **29 U.S.C. § 705(20)(A)** (defining disability for Rehabilitation Act purposes)

The Folkertses argue that the defendants failed to accommodate Travis when they interrogated him without a *Miranda* waiver, failed to provide communicative assistance, failed to professionally evaluate his level of functioning, interrogated him without his parents/guardians, failed to record the interrogation or have a witness present, failed to preserve the interrogation notes, and questioned Travis aggressively. For disparate treatment, the Folkertses claim that Travis was denied the benefit of the ability to communicate, a benefit afforded others without Travis's disability. The Folkertses point to the city's provision of communicative assistance to others with disabilities, such as American Sign Language interpreters for the hearing-impaired. In essence, the Folkertses argue not that Travis was treated differently but that he was not treated differently. Their disparate treatment claim is thus analytically similar to their failure-to-accommodate claim.

Title II and its regulations require that "qualified persons with disabilities receive effective communication that results in 'meaningful access' to a public entity's services." **Bahl**, 695 F.3d at 784, *citing* **Loye v. County of Dakota**, 625 F.3d 494, 496-97, 500 (8th Cir. 2010); *see* **28 C.F.R § 35.160(a)(1)**. "Depending on the circumstances, this may require the use of auxiliary aids and services, such as interpreters for the hearing impaired." **Loye**, 625 F.3d at 496-97 (internal quotation marks omitted). Under the meaningful access standard, aids and services "are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons," but they nevertheless "must afford handicapped persons

equal opportunity to . . . gain the same benefit." *Id.* at 499, *quoting **Alexander v. Choate***, 469 U.S. 287, 305 (1985). The inquiry "is inherently fact-intensive" and "largely depends on context." *See **Argenyi v. Creighton Univ.***, 703 F.3d 441, 449 (8th Cir. 2013), *quoting **Liese v. Indian River Cnty. Hosp. Dist.***, 701 F.3d 334, 342-43 (11th Cir. 2012).

Viewing the facts most favorably to the Folkertses, no reasonable jury could conclude that the defendants failed to make reasonable accommodations for Travis's disability. Schneider altered his questioning style, more fully explained the *Miranda* rights, interviewed Travis in a less intimidating room, drove Travis to his parents' home and explained the situation to them, and arranged alternative and friendlier booking procedures.

The dispositive accommodation is Schneider's phone call to Idella. Although the Folkertses contend that Schneider never told them that Travis was in legal trouble or that he would be or was being interrogated, Idella knew her son was at the police station and was "nervous." Assuming that Schneider ended the conversation after Idella said her presence might further upset Travis, Schneider reasonably interpreted her comment to mean that Idella was not coming to the station and was not requesting additional or alternative accommodations for Travis. On these facts, the defendants' accommodations were reasonable even if they were not necessarily "best practices – practices that in other circumstances could be evidence of a failure to reasonably accommodate." *See **Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.***, 673 F.3d 333, 340 (4th Cir. 2012).

\* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____