# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1419

_____

Dwight D. Mitchell, individually and on behalf of his children X.M. and A.M.;
Bryce Mitchell; Stop Child Protection Services From Legally Kidnapping

*Plaintiffs - Appellants*

v.

Dakota County Social Services; Patrick Coyne, individually and in his official
capacity as Executive Director of Dakota County Social Services; Joan
Granger-Kopesky, individually and in her official capacity as Deputy Director of
Dakota County Social Services; Leslie Yunker, individually and in her official
capacity as Supervisor of Dakota County Social Services; Diane Stang,
individually and in her official capacity as Supervisor of Dakota County Social
Services; Susan Boreland, individually and in her official capacity as Social
Worker of Dakota County Social Services; Chris P'Simer, individually and in his
official capacity as Social Worker of Dakota County Social Services; Christina
Akolly, individually and in her official capacity as Social Worker of Dakota
County Social Services; Jacob Trotzky-Sirr, individually and in his official
capacity as Guardian ad Litem of Dakota County; Tanya Derby, individually and
in her official capacity as Public Defender of Dakota County; Kathryn Scott,
individually and in her official capacity as Assistant County Attorney of Dakota
County; Elizabeth Swank, individually and in her official capacity as Assistant
County Attorney of Dakota County; Lucinda Jesson, individually; County of
Dakota; Pamela Wheelock, in her official capacity as Acting Commissioner of
Minnesota Department of Human Services

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 11, 2020
Filed: May 19, 2020
_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Dwight D. Mitchell ("Mitchell"), his three children, and Stop Child Protection Services from Legally Kidnapping (collectively "the plaintiffs") brought this action in response to a Child in Need of Protection of Services ("CHIPS") proceeding by Dakota County Social Services ("DCSS"). The plaintiffs sued Dakota County, DCSS, nine Dakota County officials, and three State of Minnesota officials (collectively "the defendants") asserting constitutional, federal, and state law claims. The district court[1] granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## I. Background

We describe the facts in a light most favorable to the plaintiffs, taking as true all allegations in the complaint. Mitchell, a New Jersey resident, lived in Minnesota temporarily for work with his three children, X.M., A.M., and B.M., his then-wife Tatiana Litvinenko, and Litvinenko's son. On February 16, 2014, a babysitter who was watching X.M. and A.M. called the police on behalf of X.M. reporting that Mitchell had used corporal punishment on X.M. After observing bruising, the police

_____

[1]The Honorable Wilhelmina Wright, United States District Judge for the District of Minnesota.

took X.M. and A.M. to the police station for questioning. The children told the police and DCSS workers, including appellee Susan Boreland, that Mitchell had spanked them on prior occasions. During this investigation, B.M. was attending school out of state.

Boreland contacted the children's biological mother and Mitchell's ex-wife, Eva Campos. Campos stated that Mitchell had previously abused the children and encouraged officials to pursue legal action in Minnesota. As part of the investigation, DCSS obtained New Jersey court and police records involving the Mitchells. These records indicated that Campos and Mitchell had a hostile relationship, which included an attempt by Campos to abduct the children.

Boreland initiated a CHIPS proceeding in Minnesota state court on February 18, 2014, resulting in the removal of the children from Mitchell's physical custody. In a private meeting room outside of the courtroom where an emergency hearing was held, Boreland told Mitchell, "I am going to do everything in my power to see that the children are never returned to your custody." After Mitchell told her that Campos and the children were lying about the abuse, Boreland responded: "Why are all black families so quick to spank their children? You are unfit to be parents and don't deserve to have children."

Jacob Trotzky-Sirr, a guardian ad litem who is also named as a defendant, was appointed to represent the children at the CHIPS hearing held on February 26, 2014. In accordance with Minnesota law, X.M. was also appointed attorney Tanya Derby, who is a public defender in Dakota County and named as a defendant in this action. In March 2014, Chris P'Simer replaced Boreland as the case agent assigned to the Mitchells' case.

In May 2014, Mitchell entered an <u>Alford</u> plea to a charge of malicious punishment of a child in violation of Minn. Stat. § 609.377. In July, Mitchell agreed to a court order prohibiting him from using corporal punishment in exchange for regaining physical custody of A.M. and B.M., from whom he had been separated for five months. Mitchell, A.M., and B.M. then returned to New Jersey. In December 2015, after twenty-two months, the state court dismissed the CHIPS petition and returned X.M. to Mitchell's physical custody.

The plaintiffs brought suit in federal court asserting twenty-five constitutional, federal, and state law claims. The district court granted the defendants' motion to dismiss all claims for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Plaintiffs appeal.

## II. Discussion

We review *de novo* the district court's grant of a motion to dismiss, accepting plaintiffs' well-pleaded allegations as true. <u>Ulrich v. Pope Cty.</u>, 715 F.3d 1054, 1058 (8th Cir. 2013). A plaintiff must "plead facts sufficient to raise a right to relief above the speculative level." <u>Brown v. Medtronic, Inc.</u>, 628 F.3d 451, 459 (8th Cir. 2010) (quotation marks omitted). We accept as true a plaintiff's specific factual allegations, but we are not required to accept broad legal conclusions. <u>Id.</u> We may affirm based on any grounds supported by the record. <u>Tony Alamo Christian Ministries v. Selig</u>, 664 F.3d 1245, 1248 (8th Cir. 2012).

### A. Facial Constitutionality Claims

The plaintiffs challenged three Minnesota child welfare statutes as facially unconstitutional. <u>See</u> Minn. Stat. §§ 260C.007, subds. 5, 6, & 13; 260C.301, subd. 1; and 626.556, subd. 2. The district court determined that Mitchell and his children,

as individuals, lacked standing to challenge the facial constitutionality of the statutes and dismissed the claims for lack of subject-matter jurisdiction. We review dismissal on the basis of standing *de novo*. Frost v. Sioux City, 920 F.3d 1158, 1161 (8th Cir. 2019).

Mitchell and his children assert they have standing to challenge the statutes' facial constitutionality because they might one day return to Minnesota. Stop Child Protection Services from Legally Kidnapping, an association of parents affected by Minnesota's child-protection services, asserts it has standing because its members live in Minnesota, have had experiences with Minnesota's child-protection system, and could again face state or county child abuse investigations. To establish standing, a plaintiff must show an injury in fact traceable to the defendant's conduct that will likely be redressed by a favorable decision. Frost, 920 F.3d at 1161; see also Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017). Plaintiffs seeking prospective relief based on past actions must show "a real and immediate threat that [they] would again suffer similar injury in the future." Mosby v. Ligon, 418 F.3d 927, 933 (8th Cir. 2005) (internal quotation marks omitted). Speculative future harm does not establish a real and immediate threat of injury and is insufficient to confer standing. Frost, 920 F.3d at 1161.

Mitchell's or his children's speculative return to Minnesota is insufficient to show a real and immediate threat of repeat injury. Without an injury in fact, Mitchell and his children lack standing. See Frost, 920 F.3d at 1161; see also City of L.A. v. Lyons, 461 U.S. 95, 101–02 (1983). An association like Stop Child Protection Services from Legally Kidnapping has standing if one of its members independently establishes standing. See Warth v. Seldin, 422 U.S. 490, 511 (1975). The speculative future action alleged in the plaintiffs' complaint is not enough to confer standing on

any individual member of the association.  Neither the individual plaintiffs nor the association have standing to challenge the facial constitutionality of the Minnesota statutes.[2]

*B. Mitchell's § 1983 Damages Claims*

Mitchell seeks monetary damages under 42 U.S.C. § 1983, claiming procedural and substantive due process violations, Equal Protection violations, municipal liability, and conspiracy.[3]  We address these claims in turn.

1. Due Process

Mitchell alleges the defendants violated his due process rights by failing to provide adequate procedural safeguards during the CHIPS proceeding.  He also claims the defendants interfered with his substantive due process rights to marriage, intimate association, and privacy.

Parents have a recognized liberty interest in the care, custody, and management of their children.  Webb ex rel. K.S. v. Smith, 936 F.3d 808, 815 (8th Cir. 2019).  Children and parents also share a liberty interest in their mutual care and companionship.  Id.; see also Lehr v. Robertson, 463 U.S. 248, 258 (1983). "'The

_____

[2]The plaintiffs also claim dismissal was improper because they sought relief under the Declaratory Judgment Act.  The Declaratory Judgment Act does not provide a means for standing or relief.  See Carson v. Pierce, 719 F.2d 931, 933 (8th Cir. 1983) (stating that the Declaratory Judgment Act requires a controversy appropriate for judicial determination, just like Article III standing).

[3]Some, or perhaps all, of Mitchell's claims for damages under 42 U.S.C. § 1983 might be barred by the Heck doctrine,  Heck v. Humphrey, 512 U.S. 477, 486–87 (1994), but because the issue was not raised by the parties we do not address it.

intangible fibers that connect parent and child have infinite variety . . .. It is self-evident that they are sufficiently vital to merit constitutional protection *in appropriate cases*.'" Whisman ex. rel. Whisman v. Rinehart, 119 F.3d 1303, 1310 (8th Cir. 1997) (quoting Lehr, 463 U.S. at 256). That said, the right to family integrity does not include a constitutional right to be free from child abuse investigations. Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005). The government has a compelling interest in protecting minor children, especially when it is necessary to protect them from their parents. Id. at 925–26.

State intervention in a family unit must arise under procedures sufficient to meet the requirements of the Due Process Clause. Lehr, 463 U.S. at 258. The Due Process Clause requires that the person whose rights are being interfered with receives notice and has an "opportunity to be heard at a meaningful time and in a meaningful manner." Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005) (internal quotation marks omitted). In child removal cases, the meaningful time and manner requirement means that the state must hold a hearing promptly after removal. Id.; see also Webb, 936 F.3d at 815. While Minnesota law requires a hearing be held within fourteen days of the filing of an emergency petition, Minn. Stat. § 260C.148, subd. 2, we have not established a mandatory time period in which a hearing must occur. See id.; but see Swipies, 419 F.3d at 715 (holding that a period of seventeen days is too long); see also Whisman, 119 F.3d at 1310. Minnesota also requires an emergency hearing to be held within 72 hours if a child is removed from the home on a suspicion of child abuse. Minn. Stat. §§ 260C.175, subd. 1; 260C.178, subd. 1(a).

Here, the CHIPS petition was filed two days after the children were removed, an emergency hearing was held, and a post-deprivation hearing occurred within ten days of removal. See Minn. Stat. §§ 260C.148, subd. 2; 260C.163; 260C.178, subd. 1(a). Mitchell concedes that he received appropriate notice. See Minn. Stat. § 206C.151. The amended complaint does not allege that Mitchell was denied a

meaningful opportunity to present his case or that any procedural safeguards were lacking. Because Mitchell has not alleged the omission of any procedural safeguards he was due, he has failed to state a claim for a violation of his procedural due process rights.[4]

In addition to its procedural protections, the Due Process Clause protects individual liberties from government action "regardless of the fairness of the procedures used to implement them." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (internal quotation marks omitted). To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience. Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013). Whether conduct shocks the conscience is a question of law. Id. Conscience shocking conduct only includes "the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." White v. Smith, 696 F.3d 740, 757–58 (8th Cir. 2012) (quotation marks omitted). "Only a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Folkerts, 707 F.3d at 981 (cleaned up).

By initiating and pursuing a CHIPS proceeding, the parties agree that the defendants interfered with Mitchell's liberty interest in the care, custody, and management of his children. However, Mitchell has failed to allege or demonstrate the conscience-shocking behavior necessary to establish a violation of substantive

---

[4]The complaint includes allegations that the appellees violated the Uniform Child Custody Jurisdiction and Enforcement Act by not transferring the proceeding to New Jersey. See Minn. Stat. § 518D.101 *et seq*. However, the CHIPS proceeding was an adjudication of Minnesota child protection law, not a child custody dispute requiring deferment to New Jersey courts.

due process rights. Mitchell's allegations against the defendants all derive from actions taken during the course of the child abuse investigation. Even if we accept Mitchell's claim that the defendants improperly relied on Campos' and the children's allegations, such reliance is not an egregious abuse of power that shocks the conscience. See e.g., Thomason v. SCAN Volunteer Servs., Inc., 85 F.3d 1365, 1371–72 (8th Cir. 1996) (upholding reasonable suspicion of child abuse based solely on circumstantial evidence).

Mitchell claims that Boreland's statements to him during the child abuse investigation violated his constitutional rights. While Boreland's statements were unprofessional, inappropriate, and unacceptable, they do not rise to the level of "conscience shocking behavior" under our precedent. See id. at 1372 (stating that belief of an improper investigation and unprofessionalism by a social worker were not enough to violate a plaintiff's constitutional rights). To be "conscience shocking behavior," a verbal threat must be "brutal or wantonly cruel." King v. Olmsted Cty., 117 F.3d 1065, 1067 (8th Cir. 1997). Boreland's statements, while disturbing, do not meet this standard. Because Boreland's comments were related to a child abuse investigation, even taking as true the allegations, Mitchell failed to plausibly allege a substantive due process violation. See Folkerts, 707 F.3d at 981.

Mitchell next alleges the defendants violated his due process rights during the course of the child abuse investigation by fabricating evidence. Manufacturing false evidence may be sufficient to shock the conscience and violate a plaintiff's due process rights. Livers v. Schenck, 700 F.3d 340, 351 (8th Cir. 2012). A false evidence claim requires proof that the investigators deliberately fabricated evidence to frame the defendant. Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012). Here, Mitchell has failed to allege, describe, or detail any deliberately fabricated evidence. Instead, he asserts it exists in a conclusory manner. This sort of conclusory allegation is insufficient to nudge his substantive due process claim from conceivable to plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Mitchell also claims that the defendants violated his substantive due process rights by interfering in his marriage to Litvinenko. The right to marriage is a substantive due process right, but actions that only collaterally effect family decisions do not violate the right to marry. Muir v. Decatur Cty., 917 F.3d 1050, 1053–54 (8th Cir. 2019). Mitchell alleges that Boreland threatened to remove Litvinenko's son if she did not move out of Mitchell's home. However, there is no evidence that this alleged threat had more than a collateral effect on Mitchell and Litvinenko's marriage. Mitchell did not allege a sufficient nexus to survive a Rule 12(b)(6) motion to dismiss and has failed to establish a due process violation.

2. Equal Protection

The amended complaint alleged Equal Protection violations based on racial discrimination. Because state officials are presumed to act in good faith, the plaintiff has the burden of establishing the presence of discrimination. Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015). A plaintiff may prove unlawful discrimination either by direct evidence or by creating an inference under the McDonnell Douglas burden-shifting test. Lucke v. Solsvig, 912 F.3d 1084, 1087 (8th Cir. 2019); see also Wimbley v. Cashion, 588 F.3d 959, 961 (8th Cir. 2009). An inference of racial discrimination may be established by showing that a similarly-situated person of another race was treated more favorably. Lucke, 912 F.3d at 1087. To be similarly-situated, the person must "possess[] all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination." Id.

Mitchell relies on Boreland's statements as support for his claim that the CHIPS proceeding was influenced by racial animus. "'[W]here a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless,

-10-

there is no cognizable injury warranting [damages] relief.'" Babb v. Wilkie, 140 S. Ct. 1168, 1178 (2020) (quoting Texas v. Lesage, 528 U.S. 18, 21 (1999) (per curiam) (discussing an equal protection claim)). Mitchell neither disputes that sufficient evidence existed to support the filing of a CHIPS petition nor alleges that a petition would not have been filed but for Boreland's conduct. See Minn. Stat. §§ 260C.141, subd. 1; 260C.148, subds. 1, 2. Once the petition was initiated, Boreland's decision making authority ceased. See id. at § 260C.141, subd. 1(b) (vesting jurisdiction in the court to determine whether probable cause for protection or services exists).

After the petition was filed, the court determined that the children met the definition of a "child in need of protection or services" under Minnesota law. The complaint does not allege racial animus in the court's decision. Additionally, the CHIPS proceeding continued after P'Simer replaced Boreland as the case agent. The record contains no evidence of any racial animus by P'Simer or any other defendant involved in the case. The result of the CHIPS proceeding would have been the same regardless of Boreland's reason for filing the petition. Because Boreland's statements to Mitchell did not impact the outcome of the proceeding, Mitchell has failed to plead a racial discrimination claim upon which relief may be granted. See Babb, 140 S. Ct. at 1178.

### 3. Municipal Liability & Conspiracy

The complaint alleges municipal liability against DCSS under § 1983 for its policies and failure to supervise as well as claims of conspiracy against all defendants. We have consistently recognized that "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011) (internal quotation marks omitted). Because Mitchell failed to plead a plausible constitutional claim, his

municipal liability claims cannot survive a motion to dismiss. <u>See</u> <u>id.</u> Mitchell's conspiracy claims also fail without an underlying constitutional violation. <u>See</u> <u>Robbins</u>, 794 F.3d at 997.

### C. The Children's § 1983 Damages Claims

The children seek monetary damages under 42 U.S.C. § 1983 for claims closely related to those posed by the father. Our analysis of Mitchell's § 1983 claims is equally applicable to the children's claims. On appeal, the children also raise a Fourth Amendment claim alleging an unreasonable removal from their home. The children have a fundamental right not to be unreasonably removed from their home. <u>See</u> <u>Riehm v. Engelking</u>, 538 F.3d 952, 965 (8th Cir. 2008) (requiring a protective seizure of children to occur pursuant to a court order, probable cause, or exigent circumstances). However, the children did not plead this claim to the district court and we will not consider it for the first time on appeal. <u>See</u> <u>Eagle Tech v. Expander Ams., Inc.</u>, 783 F.3d 1131, 1138 (8th Cir. 2015) ("It is well settled that we will not consider an argument raised for the first time on appeal.").

#### 1. Due Process

The children claim violations of their procedural due process rights based on their removal and retention from the family home. Like Mitchell, the amended complaint does not allege that the children were denied any procedural safeguards they were entitled to receive. The CHIPS petition was filed two days after the children's removal, an emergency protective care hearing was held, and a post-deprivation hearing was held within ten days of removal. <u>See</u> Minn. Stat. §§ 260C.148, subd. 2; 260C.178, subd. 1(a). All parties received appropriate notice. <u>See</u> Minn. Stat. § 206C.151. The children were appointed a guardian ad litem and X.M. was appointed an attorney to represent their best interests. <u>See</u> Minn. Stat. §

260C.163, subds. (3), (5). There is no claim that the children were not provided the opportunity to personally attend the hearings. See Minn. Stat. § 260C.163, subd. (2)(a). Having failed to allege or even identify the denial of a procedural safeguard, the children's procedural due process claim fails.

The children also claim a violation of their substantive due process rights based on their prolonged separation from their father. While parents and children have a liberty interest in each other's companionship, Webb, 936 F.3d at 815, "[l]aw enforcement and social workers face difficult decisions in deciding whether the risks facing a child justify intruding into the highly protected rights of familial integrity." K.D. v. Cty. of Crow Wing, 434 F.3d 1051, 1056 (8th Cir. 2006). The question is whether the defendants' actions and the resulting disruption to the plaintiffs' familial relations were disproportionate under the circumstances. Id.

In this case, the children were removed from their home based on a reasonable suspicion of child abuse. Police officers removed X.M. and A.M. from the home after the babysitter called to report X.M.'s allegations of corporal punishment. X.M. stated that Mitchell had beaten him with a belt and punched him repeatedly in the hip. Officers and Boreland observed bruises on X.M.'s arms, left hip, and buttocks. A.M. also reported that Mitchell had recently used a belt on him and faded bruises were observed on his leg and buttocks. During an interview, X.M. told officers and Boreland that Mitchell had spanked A.M. two days prior. B.M. also told Boreland that Mitchell had previously hit him and that he feared for his brother's safety if returned to Mitchell's custody. Additionally, the children's mother reported a history of abuse to both the police and Boreland. Even though the subsequent discovery of the animosity between the children's parents effectively undermined the mother's claims, the children's own statements and bruising provided sufficient reasonable suspicion to remove the children from their home. See Dornheim, 430 F.3d at 926; see also K.D., 434 F.3d at 1056 ("In light of the facts known to the officers at the

-13-

time, it was reasonable for [them] to conclude that they were presented with a situation where a child's welfare was imminently threatened."). The defendants' removal of the children under these circumstances is not an "inhumane abuse of official power" that shocks the conscience. White, 696 F.3d at 758.

After their initial removal, the children's separation from Mitchell was the result of family court orders outside of the defendants' control. See Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987) (abrogated on other grounds) ("The prolonged separation of parents and children derived from family court orders finding juvenile protection matters and ordering foster care placement."). The children have made no allegations that the family court's decisions violated their substantive due process rights. Because removal of the children was based on a reasonable suspicion of child abuse and did not shock the conscience, the children have not established a viable substantive due process violation for their prolonged separation from Mitchell.

### 2. Equal Protection, Municipal Liability, & Conspiracy

As discussed above, the children's Equal Protection claim for racial discrimination fails because the result of the CHIPS proceeding would have been the same regardless of Boreland's reasons for filing the CHIPS petition. See Babb, 140 S. Ct. at 1178. The children's claims for municipal liability and conspiracy also fail for failure to establish an underlying constitutional violation. See Moore, 647 F.3d at 849; Robbins, 794 F.3d at 997.

### C. Qualified Immunity

Even if the complaint was sufficiently pled and established a constitutional violation, the defendants would be entitled to qualified immunity. The plaintiffs' due process allegations against the individual defendants are based on events that

-14-

occurred during the child abuse investigation and court proceedings. "When a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse." Dornheim, 430 F.3d at 926 (internal quotation marks omitted). "The need to weigh a parent's right to familial integrity against the state's interest in protecting the child makes it difficult to overcome a qualified immunity defense in the context of a child abuse investigation." Id. Because the actions taken by all defendants were in response to a reasonable suspicion of child abuse, the defendants are entitled to qualified immunity.

## D. State Law Claims[5]

The district court held that it lacked subject matter jurisdiction over the plaintiffs' state law claims based on sovereign immunity and individual common law official immunity. The plaintiffs do not appeal the sovereign immunity finding. We review *de novo* the district court's ruling on the question of immunity. Johnson v. Carroll, 658 F.3d 819, 829 (8th Cir. 2011).

Although the plaintiffs argue that the defendants are not entitled to immunity on the individual capacity claims, Minnesota law entitles a public official to immunity from state law claims when the official's duties require the exercise of judgment or discretion unless the official is guilty of a willful or malicious wrong. Kariniemi v. City of Rockford, 882 N.W.2d 593, 600 (Minn. 2016); Johnson, 658 F.3d at 829.

---

[5]Similar to his claims under 42 U.S.C. § 1983, Mitchell's state law claims may be barred by Noske v. Friedberg, 670 N.W.2d 740, 744 (Minn. 2003), which bans attacking a valid criminal conviction in a subsequent civil proceeding under state law. However, the parties failed to raise or brief this potentially dispositive issue.

Official immunity depends on: "(1) the conduct at issue; (2) whether the conduct is discretionary or ministerial . . .; and (3) if discretionary, whether the conduct was willful or malicious." Kariniemi, 882 N.W.2d at 600 (internal quotation marks omitted). A discretionary duty involves "individual professional judgment that necessarily reflects the professional goal and factors of a situation." Vassallo ex rel. Brown v. Majeski, 842 N.W.2d 456, 462 (Minn. 2014) (internal quotation marks omitted).

The parties do not dispute that the defendants' conduct was discretionary, but rather allege that it was willful and malicious. In the context of official immunity, malice exists where an official intentionally committed an act that he or she believed was illegal. Johnson, 658 F.3d at 829. An act is not malicious if it: (1) was objectively legally reasonable, (2) was performed in good faith, or (3) did not violate a clearly established right. Gleason v. Metro. Council Transit Ops., 563 N.W.2d 309, 318 (Minn. Ct. App. 1997). To find malice, the court must determine that "the wrongful act so unreasonably put at risk the safety and welfare of others that as a matter of law it could not be excused or justified." Vassallo, 842 N.W.2d at 465 (internal quotation marks omitted).

The amended complaint's conclusory allegations that the defendants fabricated unidentified evidence are insufficient to establish malice. The amended complaint also alleges a malicious concealment of documents relating to the New Jersey custody proceedings. It is indisputable that Mitchell had access to the New Jersey documents and had the same duty as the defendants to present them to the state court, which he did. The defendants' actions in investigating child abuse, initiating a CHIPS proceeding, and presenting their findings to the state court were all based on an objectively legal basis. Nothing in the amended complaint plausibly alleges that the defendants believed their actions were illegal or explains which clearly established right the appellees violated. Additionally, there is no allegation that the defendants

-16-

failed to act in good faith. No conduct by the individual defendants, as alleged in the amended complaint, rose to the level of maliciousness required to deny official immunity under Minnesota law.

*E. Declaratory Relief*

The plaintiffs sought a declaratory judgment invalidating Dakota County's invoices to Mitchell for foster care costs under the Uniform Declaratory Judgments Act. <u>See</u> Minn. Stat. § 555.01 *et seq.* Because they have not established an underlying cause of action, there is no basis on which to award declaratory relief. <u>See</u> <u>Onvoy, Inc. v. ALLETE, Inc.</u>, 736 N.W.2d 611, 617 (Minn. 2007).

**III. Conclusion**

For the foregoing reasons, we affirm.

_____