# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2405
_____

United States of America

*Plaintiff - Appellee*

v.

Deandre Joseph Warren

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 25, 2020
Filed: January 12, 2021
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Deandre Warren pleaded guilty to possession with intent to deliver heroin within 1,000 feet of a school, reserving his right to appeal the district court Order denying his motion to suppress.[1] The court then determined that Warren is a career

_____

[1] The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, adopting in part and modifying in part the Report and

offender and sentenced him to 188 months imprisonment. On appeal, Warren argues the court erred in not suppressing controlled substances found at the time of his arrest as fruits of an unlawful seizure, and in determining he is a career offender. Reviewing factual findings for clear error and questions of law *de novo*, we affirm. See United States v. Gordon, 741 F.3d 872, 875 (8th Cir. 2013) (standard of review).

## I. Fourth Amendment Seizure Issues

At 8:43 p.m. on August 4, 2018, Cedar Rapids Police Officers Ryan Harrelson and Alexander Haas responded to a noise complaint regarding a house where Haas knew there had been frequent calls of disturbances and drug activity. Parking in front of the residence, the officers heard no noise as they exited their squad car. Harrelson walked to the front of the house to ask its occupants about the complained-of noise. Haas scouted nearby to determine other possible sources of the noise, standard protocol in investigating noise complaints that have no apparent source.

Behind the house, Officer Haas saw a parked car with its headlights on in an unlit alley facing the yard of the home, with a pair of hands sticking out the front driver's side window. Haas cautiously approached and explained to the driver he was investigating a noise complaint. Cedric Jenkins was in the driver's seat, Warren was in the front passenger seat, and two women were in the back seat. Haas asked the driver for identification. Jenkins replied they had just arrived, he had driven to the house, and he did not have a driver's license. Haas asked Jenkins to step out of the vehicle while he verified Jenkins's identity and investigated the traffic violation of driving without a license. See Iowa Code § 321.174. At this point, Warren began to exit the car. Officer Haas said, "Sir, can you just stay in there for me, please?" Warren complied. Jenkins stepped out and spoke with Officer Haas.

---

Recommendation of the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

Haas radioed that he was behind the house with four persons and requested backup. Officer Harrelson ended his conversation with the occupants and went behind the house to assist Officer Haas. As Harrelson approached the passenger side of the vehicle, he smelled marijuana emanating from the vehicle, covered by cigarette smoke. Officer Otis also responded to the call for backup, arriving two minutes later. As he approached the passenger side, Otis smelled cigarette smoke but not marijuana. He talked with Warren, who was cooperative but nervous. Otis allowed Warren to reach in the glove compartment for a cigarette. When Warren appeared to reach under his left leg, Otis shined his flashlight down inside the front passenger door and saw a baggie of marijuana tucked between the passenger seat and the door. Otis removed Warren from the vehicle, handcuffed him, and put him in the back seat of Haas's squad car, which was now in the alley. Otis searched the rest of the parked car, finding an additional bag of marijuana and a small bag of heroin.

In the squad car, Warren complained he was hot and claustrophobic. Haas let him sit in the back with the door open or stand up. Officer Shuman arrived and parked next to Haas's squad car. Officers Shuman and Otis saw Warren stand up, lean against the squad car, reach into his underwear, and make a "strange shaking motion." A baggie containing nine smaller baggies of marijuana and twenty two baggies of heroin fell to the ground and was seized.

Warren moved to suppress all controlled substances seized on August 4, 2018. The only issue on appeal is whether the drugs were fruits of an unlawful seizure when Officer Haas instructed Warren to remain in the car without probable cause, reasonable suspicion, or other sufficient basis. After a hearing, the magistrate judge issued a lengthy Report and Recommendation that the motion to suppress be denied. The district court adopted the report with modifications, concluding in a lengthy Order that Warren was not seized when Officer Haas asked him to remain in the car. Alternatively, even if the request was a directive constituting a seizure under United States v. Mendenhall, 446 U.S. 544, 554-55 (1980), the court concluded that Officer

-3-

Haas was engaged in a permissible investigative stop of driver Jenkins's traffic violation, and legitimate officer safety concerns justified asking Warren to remain in the car to preserve the status quo.

Warren argues that he was subject to an unlawful seizure when Officer Haas asked him to "just stay in there for me, please." As the district court recognized, a person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007) (quotation omitted). Seizure is an issue of law we review *de novo*. A seizure occurs "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." INS v. Delgado, 466 U.S. 210, 215 (1984). Not every direction by an officer constitutes a seizure. See, e.g., United States v. Valle Cruz, 452 F.3d 698, 706 (8th Cir. 2006) (officer telling vehicle driver to "sit tight" did not effect a seizure). There is "a constitutionally significant distinction between an official command and a request that may be refused." United States v. Vera, 457 F.3d 831, 835 (8th Cir. 2006), cert. denied, 549 U.S. 1230 (2007). Here, the district court concluded that Haas's statement, "Sir, can you just stay in there for me, please," was a request, not a command. Haas spoke to Warren with respect in a voice that was polite, calm, and normal in volume and tone. When Warren complied, Haas thanked him. Warren's compliance did not convert the request into a command. We agree.

Warren argues that a fair paraphrasing of Haas's politely worded request when Warren attempted to get out of the car was, "Don't get out of the car," as evidenced by Haas's testimony at the suppression hearing, "If he walked away, I would have told him to stop." But this post-hoc rephrasing of a request into the words of a command disregards the fact that Haas's statement and actions did not manifest an intent to compel compliance. Haas's subjective intent to stop Warren if he attempted to walk away "is irrelevant except insofar as that may have been conveyed to

[Warren]." Mendenhall, 446 U.S. at 554 n.6. Haas's words and manner left Warren the choice whether to leave or stay. "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." United States v. Drayton, 536 U.S. 194, 204 (2002). Warren chose to comply with the request, presumably for an obvious reason having nothing to do with whether he interpreted it as a request or a command: the most likely way to avoid discovery of the baggies of heroin and marijuana on his person was to cooperate with an officer while the officer completed a routine traffic investigation of driver Jenkins. It is pure speculation how Haas would have responded if Warren, instead of complying, had continued to exit the car or asked Haas whether he was free to leave. In these circumstances, the words Haas used and his tone and manner in making a request to cooperate are controlling. Thus, there was no seizure until Officer Otis discovered controlled substances in the car and ordered Warren out of the car.

Alternatively, even if Officer Haas's request is construed as a command that passenger Warren remain in the parked vehicle, we agree with the district court that officer safety concerns made this brief seizure objectively reasonable. Warren does not dispute that Officer Haas had reasonable suspicion of a traffic violation that gave him authority to detain and investigate driver Jenkins. See Terry v. Ohio, 392 U.S. 1, 21 (1968). But he argues Haas had no authority to detain passenger Warren.

During a lawful traffic stop, officers can take actions that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." United States v. Hensley, 469 U.S. 221, 235 (1985). In Maryland v. Wilson, 519 U.S. 408, 415 (1997), the Supreme Court held that an officer may order passengers out of the car pending his investigation of the traffic stop. "Danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." Id. at 414. Likening this situation to the detention of the occupants of a home during a warrant search, the

-5-

Court explained that "[t]he risk of harm is minimized if the officers routinely exercise unquestioned command of the situation." Id., quoting Michigan v. Summers, 452 U.S. 692 (1981). In Brendlin, the Court further noted it is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." 551 U.S. at 258. In United States v. Sanders, we held that an officer making a traffic stop may "reinstate[] the status quo" by asking a passenger who left the vehicle to reenter. 510 F.3d 788, 791 (8th Cir. 2007), cert. denied, 553 U.S. 1013 (2008); cf. United States v. Holt, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc) (asking passenger to remain in vehicle); Rogala v. District of Columbia, 161 F.3d 44, 45 (D.C. Cir. 1998) (same); United States v. Moorefield, 111 F.3d 10, 11 (3d Cir. 1997) (same).

Warren argues the situation at issue is not controlled by these cases because the vehicle was already stopped when Haas began his traffic investigation and therefore Warren had a heightened liberty interest in leaving the vehicle that outweighed the government interest in securing the scene. As always, the Fourth Amendment issue is whether, viewing the totality of the circumstances, Officer Haas was objectively reasonable in asking Warren to remain in the car while Haas investigated the traffic violation. See Arizona v. Johnson, 555 U.S. 323, 332 (2009). Viewed in this light, we do not agree that the analysis is different because the vehicle was already parked.

Haas was investigating a noise complaint behind a house known for frequent disturbances and drug-related activity. He encountered four persons in a parked car with its lights on in an unlit alley. He approached cautiously and asked what they were doing. When driver Jenkins admitted driving there without a license, Haas had reasonable suspicion to detain Jenkins while he investigated a traffic violation that would preclude Jenkins from driving away. Warren's attempt to exit the car presented a real risk to officer safety. It was dark and Haas was alone, outnumbered four to one. If there was contraband in the car or other criminal activity afoot, he faced a risk of violent encounter. See Johnson, 555 U.S. at 331; Maryland v. Pringle,

-6-

540 U.S. 366, 373 (2003). So he asked Warren to stay in the car and radioed for backup assistance.

Traffic stops are inherently fraught with danger to police officers, "so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." Rodriguez v. United States, 135 S. Ct. 1609, 1616 (2015). The safety of the officer "is both legitimate and weighty." Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977). Here, asking Warren to stay in the car was no more burdensome than asking a passenger to exit the vehicle during a traffic stop, the police action upheld in Wilson, 519 U.S. at 415. Reasonable actions at the scene of an investigation to ensure safety and preserve the status quo require no probable cause or reasonable suspicion. See Brendlin, 551 U.S. at 258. Moreover, if driver Jenkins lacked a license and could not drive the vehicle away, it might be to the officers' and the passengers' advantage if Warren was licensed and willing to take control of the car so it need not be impounded, leaving its occupants stranded.

For these reasons, the Order denying Warren's motion to suppress is affirmed.

## II. Sentencing Issues

Warren argues the district court erred in determining he is a career offender because his three prior Illinois drug convictions were not "controlled substance offenses" under USSG § 4B1.2(b), and his prior Iowa conviction for Domestic Assault with strangulation was not a "crime of violence" under § 4B1.2(a)(1). Warren concedes that we rejected the first argument in United States v. Merritt, 934 F.3d 809, 811 (8th Cir. 2019), cert. denied, 140 S. Ct. 981 (2020), and the second argument in United States v. Boleyn, 929 F.3d 932 (8th Cir. 2019), cert. denied, 140 S. Ct. 1128 (2020). As a panel, we are bound by these controlling decisions. Accordingly, we need not consider the government's alternative argument that any error was harmless because the district court stated that if its career offender analysis

was wrong, "I would reach the same sentence under the 3553(a) factors." See, e.g., United States v. McGee, 890 F.3d 730, 737 (8th Cir. 2018). Warren has preserved these issues for en banc review.

The judgment of the district court is affirmed.

_____