# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1091
_____

Debbie Ann Tucker

*Plaintiff - Appellant*

v.

Alejandro Boldo, a Minneapolis Police Officer

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 23, 2025
Filed: February 2, 2026
_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Debbie Tucker claims that Officer Alejandro Boldo used excessive force when he closed a car door on her leg. The district court[1] thought otherwise, and so do we.

---

[1]The Honorable Jeffrey M. Bryan, United States District Judge for the District of Minnesota.

## I.

When a Minneapolis police officer noticed a car parked in a handicapped spot without a tag, he decided to stop and investigate further. Sitting inside the car were Tucker and her daughter. In the driver's seat was a family friend, who had multiple outstanding felony arrest warrants.

By the time Officer Boldo arrived, the other officer was placing the driver in handcuffs, and a woman was shouting "no, he don't!" and "bullshit!" As he approached the passenger side, he saw Tucker opening the car door. To keep her inside, he blocked the door and pushed back on it, catching her foot in the process. She yelled, "Ow! Why you smashing my foot?" But rather than following Boldo's order to "[s]tay in the car" and "pull it in," she cursed at him and tried opening the door a second time. Boldo once again blocked it, which caused Tucker to curse, wave her hands, and try to scratch his face. He eventually walked away, but only after Tucker's daughter intervened.

With the incident behind her, Tucker filed a federal lawsuit against Officer Boldo. She alleged that, by closing the door on her foot, he had used excessive force, *see* 42 U.S.C. § 1983, and committed a battery. Immunity under both federal and state law ended the case at summary judgment.

## II.

We review the district court's decision to grant summary judgment de novo. *See Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). It was "appropriate [if] the evidence, viewed in [the] light most favorable to [Tucker], shows no genuine issue of material fact exists and [Officer Boldo was] entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citation omitted).

## A.

Whether qualified immunity applies to Tucker's excessive-force claim comes down to two questions. First, did Officer Boldo violate a constitutional right? And second, was the right clearly established? *See Morgan*, 920 F.3d at 523. If the answer to either question is "no," then we will affirm the grant of summary judgment. *See id.* (noting that we may answer them in either order). Here, we never get past the first question because his use of force was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989).

Consider the situation Officer Boldo faced. When he arrived, an argumentative passenger was upset about the fact that another officer was arresting the driver, a suspected felon. As Boldo's bodycam footage confirms, however, he could not tell who was causing the commotion: Tucker, the front-seat passenger, or her daughter, who was in the back. "[A] reasonable officer" in his position could have thought that Tucker would try to interfere with the arrest, or possibly even confront the other officer. *Id.* at 396.

Given these concerns, it was reasonable to order her to stay in the car and then use "some force" when she refused to do so. *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 990 (8th Cir. 2015) (emphasis omitted). After all, these types of encounters can be particularly dangerous for officers "when there are passengers in addition to the driver." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). In some situations, they can turn deadly. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (recognizing the "inordinate risk confronting an officer as he approaches a person seated in an automobile").

For that reason, it has been the law for decades that officers can take steps that are "reasonably necessary to protect their personal safety and . . . maintain the status quo." *United States v. Hensley*, 469 U.S. 221, 235 (1985); *see Wilson*, 519 U.S. at 414 ("The risk of harm . . . is minimized if the officers routinely exercise unquestioned command of the situation." (citation omitted)). Sometimes, all it takes

is asking passengers to remain in the car. *See United States v. Warren*, 984 F.3d 1301, 1304–05 (8th Cir. 2021). Other times, further action is necessary to prevent anyone from "mov[ing] around in ways that could jeopardize" officer safety. *Brendlin v. California*, 551 U.S. 249, 258 (2007).

Officer Boldo decided to do both.[2] At first, he just told her to "[s]tay in the car" while holding out his hand to stop the car door from opening and pushing back on it. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("A de minimis use of force is insufficient to support a claim . . . ." (emphasis and citation omitted)). And then, when Tucker began shouting, cursing, and pushing the door toward him, he used more force to keep her inside. *See McElree v. City of Cedar Rapids*, 983 F.3d 1009, 1016–17 (8th Cir. 2020) (noting that an officer may "increase [the] restraint proportionate to [the] uncooperative behavior"). It is unfortunate that she ended up with a bruised leg, but this minor injury does not transform a reasonable use of force into an unreasonable one. *See Atkinson v. City of Mountain View*, 709 F.3d 1201, 1211 (8th Cir. 2013) ("[T]he lack, or minor degree, of any injury sustained . . . is relevant in considering the reasonableness of the force used." (emphases and citation omitted)).

The point is that, even viewing the record in the light most favorable to Tucker, the force Officer Boldo used was not excessive given the level of "uncooperative behavior" he faced. *McElree*, 983 F.3d at 1017; *see Graham*, 490 U.S. at 395–96. There is nothing unconstitutional about officers taking reasonable steps to protect themselves in potentially dangerous situations. *See Hensley*, 469 U.S. at 235.

---

[2]Tucker claims Officer Boldo's motives were nefarious: he was just looking for an excuse to "attack[]" her. His subjective motivations, however, make no difference because the constitutional test for excessive force is objective. *See Graham*, 490 U.S. at 397; *see also Torres v. Madrid*, 592 U.S. 306, 317 (2021) (noting that courts "rarely probe the subjective motivations of police officers in the Fourth Amendment context").

B.

We reach the same conclusion about Tucker's battery claim. In Minnesota, official immunity protects officers for discretionary acts like the ones here, unless done willfully or maliciously. *See Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1999) (discussing "responding to a dispatch [and] making an arrest" as examples); *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 902 (8th Cir. 2020) (describing the exception for a "willful or malicious wrong"). Objectively reasonable acts are neither, however, so official immunity applies. *See Mitchell*, 959 F.3d at 902 (citing *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 318 (Minn. App. 1997)).

III.

We accordingly affirm the judgment of the district court.

_____